UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHEILA REIS, DENNIS REIS, ASHLEY REIS MILDRED PACHECO, GARY SOUZA, DONNA SOUZA, individually and on behalf of her minor children STEPHANIE PEZZONE and BRITNEY CORDEIRO for whom she is legally Guardian, JAMIE BERGERON, individually and on behalf of her minor children KRISTA CAMARA and ETHAN BARNETT, ALAN TRECIDA and KIM TRECIDA individually and on behalf of their minor children ELAINA TRECIDA and JOSEPH A. TRECIDA, | C.A. No. 05-522T<br>(Related Cases: 05-221T; 05-274T; 05-370T) |
| Plaintiffs, | |
| v. | |
| SOUTHERN UNION COMPANY dba FALL RIVER GAS COMPANY, and NEW ENGLAND GAS COMPANY | |
| Defendant. | |

**DEFENDANT SOUTHERN UNION COMPANY'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Southern Union Company (improperly sued as "dba Fall River Gas Company") and its unincorporated division New England Gas Company (collectively, "Southern Union") hereby move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Complaint. As set forth in the accompanying Memorandum of Law, the

Complaint fails entirely to state a claim upon which relief can be granted. Therefore, this Court should grant Southern Union's Motion to Dismiss Plaintiffs' Complaint.

Dated: Providence, Rhode Island
February 8, 2006

Respectfully Submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

John A. Tarantino (#2586)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

*Attorneys for Defendant Southern Union Company and its division New England Gas Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February, 2006, a copy of the foregoing was mailed first class U.S. postage/~~hand delivered~~ to the following:

Russell X. Pollock, Esq.
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129

Paul Revere, III, Esq.
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632

*370960_1.doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHEILA REIS, DENNIS REIS, ASHLEY REIS MILDRED PACHECO, GARY SOUZA, DONNA SOUZA, individually and on behalf of her minor children STEPHANIE PEZZONE and BRITNEY CORDEIRO for whom she is legally Guardian, JAMIE BERGERON, individually and on behalf of her minor children KRISTA CAMARA and ETHAN BARNETT, ALAN TRECIDA and KIM TRECIDA individually and on behalf of their minor children ELAINA TRECIDA and JOSEPH A. TRECIDA,

Plaintiffs,

v.

SOUTHERN UNION COMPANY dba FALL RIVER GAS COMPANY, and NEW ENGLAND GAS COMPANY

Defendant.

C.A. No. 05-522T

(Related Cases: 05-221T; 05-274T; 05-370T)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOUTHERN UNION COMPANY'S <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

Defendant Southern Union Company (improperly sued as "dba Fall River Gas Company") and its unincorporated division New England Gas Company (collectively, "Southern Union") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Complaint ("Complaint" or "Compl.") in its entirety pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

By this action, Plaintiffs seek to recover money damages and declaratory and injunctive relief as a result of alleged contamination of the soil on property that they currently own or reside upon within the Town of Tiverton, Rhode Island. Plaintiffs allege that their properties are contaminated by waste allegedly generated by one or more manufactured gas plant ("MGP") facilities owned by Fall River Gas Company ("FRGC") prior to the acquisition, by Southern Union, of FRGC and its subsequent consolidation into the New England Gas Company.[1] Plaintiffs allege that FRGC failed to properly dispose of the MGP waste it allegedly generated, and that Southern Union, as FRGC's successor, is responsible for the alleged contamination of Plaintiffs' properties and for any ensuing damages. Specifically, Plaintiffs' Complaint asserts the following causes of action against Southern Union: (1) negligence; (2) "recklessness/gross negligence;" (3) strict liability; (4) private nuisance; and (5) public nuisance. (Compl. ¶¶ 48-74). Plaintiffs also seek punitive damages.

Plaintiffs' claims must be dismissed as each fails to state a claim upon which relief can be granted. The negligence cause of action fails because neither Southern

[1] In 2000, Southern Union acquired Providence Gas, Fall River Gas Works and Valley Gas Company, and combined them to create the New England Gas Company, an unincorporated division of Southern Union.

Union, nor FRGC, owed a duty to Plaintiffs upon which to base a claim of negligence. The "recklessness/gross negligence" claim also must be dismissed because Rhode Island does not recognize a claim for recklessness or gross negligence separate and distinct from ordinary negligence. Plaintiffs' claim premised upon strict liability fails because the state of Rhode Island does not apply the doctrine of strict liability to the disposal of potentially hazardous materials. Plaintiffs' private nuisance claim is also fatally defective because it is not based on FRGC's use of its own property -- an essential element of such claim under Rhode Island law -- and because Plaintiffs' properties are not adjacent to or "neighboring" any present or former FRGC facility. Similarly, the claim for public nuisance fails because Plaintiffs do not allege that they have suffered a harm in the exercise of a right common to the general public, but rather in the exercise of their private property rights. Finally, Plaintiffs' demand for punitive damages must also be stricken as Plaintiffs fail to plead any facts to support such damage claim.

## FACTUAL ALLEGATIONS[2]

Plaintiffs seek redress for injuries resulting from claimed contamination of their properties in Tiverton, Rhode Island, allegedly caused by waste products of the manufactured gas process.[3] (Compl. ¶¶ 38, 40). Plaintiffs allege that "historical information provided by the Town of Tiverton to RIDEM documented that coal gasification wastes produced by [FRGC] had been disposed of" on land where Plaintiffs now reside or own property. (Compl. ¶ 38). On March 17, 2003, the Rhode Island Department of Environmental Management ("RIDEM") issued a Letter of Responsibility

[2] Well-pleaded facts are assumed true solely for purposes of this motion.

[3] Coal gasification was utilized by public utilities to manufacture gas until the mid-20th century when the process was replaced by the use of natural gas.

to Southern Union in connection with the allegedly contaminated soils discovered in Tiverton. (Compl. ¶ 39). Plaintiffs allege that their exposure to such wastes have caused them to suffer "immune system responses" (Compl. ¶ 45) and has "increased the likelihood that they will develop cancer or other grievous disease." (Compl. ¶ 46). Plaintiffs also contend their properties have been rendered "essentially valueless" as a result of the discovery of the waste. (Compl. ¶ 47).

Based upon applicable Rhode Island law as applied to these facts, taken in the light most favorable to Plaintiffs, each of Plaintiffs' claims must be dismissed.

## ARGUMENT

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted where, as here, the allegations of the complaint demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although in considering this motion the Court must assume as true the factual allegations in the Complaint, the Court should only credit Plaintiffs' well-pleaded allegations of fact, not unsubstantiated assertions and legal conclusions. See e.g., Flemming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990); Arroyo-Santiago v. Garcia-Vicario, 1999 U.S. App. LEXIS 17909, *12-13 (1st Cir. July 28, 1999) (stating, "[the court] need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," and finding complaint inadequate because of reliance on vague and conclusory assertions) (internal quotations and citations omitted).

A plaintiff must set forth factual allegations with respect to each material element necessary to sustain recovery under some actionable legal theory. The First Circuit has discussed the dividing line between adequate "facts" and inadequate "conclusions:" "[I]t is only when conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." Cooperman v. Individual Inc., 171 F.3d 43, 47-48 (1st Cir. 1999) (internal quotation and citation omitted).

As demonstrated below, applying these standards, the Complaint should be dismissed.

**A. Plaintiffs' First Cause Of Action For Negligence Must Be Dismissed Because FRGC Owed No Duty To Plaintiffs**

The Rhode Island Supreme Court has stated that "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff." Gray v. Derderian, 371 F. Supp. 2d 98, 104 (D.R.I. 2005) (quoting Kenney Mfg. Co. v. Starkweather & Shepley, Inc., 643 A.2d 203, 206 (R.I. 1994)). Whether such a duty exists is a question of law to be determined by the court. Hydro-Mfg. Inc. v. Kayser-Roth Corp., 640 A.2d 950, 955 (R.I. 1994) (citing Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1224 (R.I. 1987)); Barratt v. Burlingham, 492 A.2d 1219, 1222 (R.I. 1985) (same).

No Rhode Island case has ever recognized the existence of a duty owed by a purported waste generator to subsequent purchasers of non-neighboring property upon which waste was disposed of years before the development of the property. Accordingly, as FRGC owed no duty to Plaintiffs, the negligence claim must be dismissed. See, e.g.,

Builders Specialties Co. v. Goulet, 639 A.2d 59, 60-61 (R.I. 1994) (upholding trial court's grant of motion to dismiss negligence claim based on absence of duty to plaintiff).

**B. Plaintiffs' "Recklessness/Gross Negligence" Claim Must Be Dismissed**

It is well settled that "Rhode Island does not recognize more than one degree of negligence. . . . The Court must analyze the allegations of negligence, gross negligence and negligence per se as one allegation of negligence." Wilson Auto Enters., Inc. v. Mobil Oil Corp., 778 F. Supp 101, 104 (D.R.I. 1991) (citation omitted). See also National Credit Union Admin. Bd. v. Regine, 795 F. Supp. 59, 69 (D.R.I. 1992) (plaintiff's "recklessness claim . . . does not state a cause of action different from the negligence claim."); National India Rubber Co. v. Kilroe, 173 A. 86, 87 (R.I. 1934) ("The doctrine of degrees of negligence is not recognized in this State," therefore, the allegation "that the negligence of the employer was gross is surplusage and is immaterial."). Thus, Plaintiffs' claim for "recklessness/gross negligence" does not set forth a cause of action separate and distinct from the negligence claim asserted by Plaintiffs' First Cause of Action and should be dismissed.

**C. Plaintiffs' Strict Liability Claim Must Be Dismissed**

Plaintiffs base their strict liability claim on the assertion that FRGC "engaged in an ultrahazardous activity when it engaged in the business of operating coal gasification facilities," (Compl. ¶ 65), and on the "high degree of risk associated with the operation of coal gasification facilities." (Compl. ¶ 66). However, Rhode Island does not recognize the mere handling and disposal of hazardous waste as an abnormally dangerous activity.

Under Rhode Island law, "[a]bsolute liability attaches only to ultrahazardous or abnormally dangerous *activities* and not to ultrahazardous or abnormally dangerous

*materials*." Splendorio v. Bilray Demolition Co., 682 A.2d 461, 465-466 (R.I. 1996) (citing G.J. Leasing Co. v. Union Elec. Co., 854 F. Supp. 539, 567-69 (S.D. Ill. 1994) (emphasis added)). This view is consistent with the Second Restatement of Torts: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the *activity*, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(1) (1977) (emphasis added).[4]

Central to the determination of whether an *activity* is abnormally dangerous so as to warrant the application of strict liability -- a question of law for the court, see Splendorio, 682 A.2d at 465 -- is whether the risks associated with the activity can be limited by the exercise of reasonable care. See Toledo v. Van Waters & Rogers, Inc., 92 F. Supp. 2d 44, 56 (D.R.I. 2000) ("courts have focused on whether the risk involved could be reduced through the exercise of reasonable care"). Simply put, if an activity can be made safer through the exercise of reasonable care, the activity is not ultrahazardous as a matter of law. See Splendorio, 682 A.2d at 466 (while acknowledging that "asbestos is understandably an ultrahazardous or abnormally dangerous material," holding that the inspection of buildings for asbestos was not an abnormally dangerous activity because the activities could be carried out safely with the exercise of reasonable care) (emphasis added); Toledo, 92 F. Supp. 2d at 55-57 (under Rhode Island law, the transportation of barrels containing nitric and sulfuric acid was not in and of itself abnormally dangerous

[4] Indeed, "[i]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." Splendorio, 682 A.2d at 466 (quoting City of Bloomington, Ind. v. Westinghouse Elec. Corp., 891 F.2d 611, 615-17 (7th Cir. 1989)).

so as to warrant strict liability because such activity is routinely performed safely when parties exercise reasonable care).

No Rhode Island court has ever held that the disposal of hazardous waste is an abnormally dangerous activity warranting the imposition of strict liability. Indeed, despite the opportunity to extend and apply the doctrine of strict liability for abnormally dangerous activities to the handling and disposal of hazardous waste, the Rhode Island Supreme Court has not done so. See, e.g., Hydro-Mfg., Inc., 640 A.2d at 958 (declining to apply the rule of strict liability for abnormally dangerous activities to the defendant's handling of TCE).[5] Moreover, other courts have specifically held, as a matter of law, that such an activity is not abnormally dangerous. For example, in Bernbach v. Timex Corp., the court dismissed, for failure to state a cause of action, strict liability claims based on soil and groundwater contamination resulting from a manufacturing facility's disposal of various hazardous substances, where plaintiffs failed to allege "circumstances and conditions in [defendant's] activities such that, irrespective of due care, the activities involve a risk of probable injury to such a degree that [they] fairly can be said to be intrinsically dangerous." 989 F. Supp. 403, 407 (D. Conn. 1996) (internal quotations omitted). See also Schwartzman, Inc. v. Gen. Elec. Co., 848 F. Supp. 942, 945 (D.N.M. 1993) (granting motion to dismiss strict liability claim based on disposal of petroleum products and other hazardous wastes; despite the fact that such materials "may present a

[5] The Court in Hydro-Mfg., Inc. also refused to hold a prior owner of property strictly liable to a subsequent purchaser because plaintiff did not bring the claim "as an injured landowner or visitor on [defendant's] property." Id. at 958. Surely FRGC, a non-neighboring owner who allegedly polluted the land long before it was ever developed and purchased by Plaintiffs, likewise does not owe a duty in strict liability to Plaintiffs -- even if such a cause of action were extended to the disposal of hazardous substances.

substantial degree of risk to persons or property when mishandled," the court held that "the risks can be eliminated through the exercise of reasonable care").[6]

The burden of coming forward with facts sufficient to support a theory of strict liability based on abnormally dangerous activities rests with Plaintiffs. See Fletcher, 129 F. Supp. 2d at 1260-1262 (granting motion to dismiss strict liability count); Chaveriat v. Williams Pipe Line Co., 1994 U.S. Dist. LEXIS 15082, *17-19 (N.D. Ill. Oct. 18, 1994) (same). FRGC's alleged handling and disposition of coal byproducts was not so intrinsically dangerous as a matter of law that the risks involved could not be mitigated through the exercise of reasonable care. Indeed, RIDEM and the Environmental Protection Agency ("EPA") have procedures for the safe handling and disposal of these materials.[7]

Accordingly, FRGC did not engage in an ultrahazardous or abnormally dangerous activity, and Plaintiffs' claim premised upon strict liability must be dismissed.

### D. Plaintiffs' Private Nuisance Claim Must Be Dismissed

Under Rhode Island law, "a private nuisance 'arises from the unreasonable use of one's property that materially interferes with a neighbor's physical comfort or the

---

[6] Courts have routinely dismissed strict liability claims based on activities involving hazardous substances, where the risks associated with the activity could be limited by the exercise of due care. See, e.g., Marmo v. IBP, Inc., 362 F. Supp. 2d 1129, 1134 (D. Neb. 2005) (operation of a wastewater treatment facility generating hydrogen sulfide was not an abnormally dangerous activity because the risk of harm associated with its emission could be controlled with due care); Fletcher v. Conoco Pipe Line Co., 129 F. Supp. 2d 1255, 1261 (W.D. Mo. 2001) (dismissing strict liability claim where neither the operation of a petroleum pipeline nor the use of cathodic protection was an abnormally dangerous activity as a matter of law because they are easily regulated activities that can be performed safely); Arlington Forest Associates v. Exxon Corp., 774 F. Supp. 387, 390 (E.D. Va. 1991) (storage and removal of gasoline in underground tanks not abnormally dangerous because it could be made safe through the exercise of reasonable care).

[7] See RIDEM "Rules and Regulations For Hazardous Waste Management" which contain the rules (and which incorporate EPA's federal regulations) that govern the generation, transportation, treatment, storage and disposal of hazardous waste. See also Schwartzman Inc., 848 F. Supp. at 945 (noting that "the premise of many environmental laws . . . is that proper handling and disposal of these materials minimizes or eliminates the risk of their use").

neighbor's use of his real estate.'" Hydro-Mfg., Inc., 640 A.2d at 957 (quoting Weida v. Ferry, 493 A.2d 824, 826 (R.I. 1985)). Thus, a claim for private nuisance is premised on wrongful activity conducted *on a defendant's property*, which adversely affects a *neighbor*.

In this case, Plaintiffs cannot establish the existence of a private nuisance because the wrong alleged here -- the off-site transportation and deposit of material generated by a manufacturing process -- is not an activity that occurred on FRGC's property, or a condition maintained by FRGC. See Saco Steel Co. v. Saco Defense, Inc., 910 F. Supp. 803, 812 (D. Me. 1995) (dismissing private nuisance claim where "[d]efendant's alleged activity on its land, generating hazardous substances, did not, by itself, cause injury to Plaintiff's neighboring land."); Hooksett Sch. Dist. v. W.R. Grace & Co., 617 F. Supp. 126, 133 (D.N.H. 1984) (rejecting nuisance claim on the basis that the "[p]laintiff seeks to recover from [d]efendant not in its capacity as a property owner, but in its capacity as a manufacturer"). Plaintiffs cannot disguise this incontrovertible fact by alleging that their harm resulted from FRGC's "handling, disposal of, and release of coal gasification wastes emanating from its own property." (Compl. ¶ 69). Even assuming *arguendo* that the material at issue was initially generated at FRGC's former manufactured gas plant, FRGC's use of its own property is clearly not at issue here because such manufacturing use is not alleged to have damaged Plaintiffs in any way.

Furthermore, Plaintiffs do not -- because they cannot -- allege that any of their properties were, at any time, a "neighbor" of any FRGC facility. In fact, Plaintiffs' properties are located about one mile -- a minimum of 10 city blocks and numerous intervening properties -- away from the nearest former Fall River manufactured gas plant.

As such, Plaintiffs fail to establish the very heart of a private nuisance claim: that there exists a close physical proximity between Plaintiffs' property and FRGC's property, such that they can be described as "neighboring."[8] See Hydro-Mfg., Inc., 640 A.2d at 957 ("Historically the law of private nuisance has been applied to conflicts between neighboring, contemporaneous land uses.").[9]

FRGC's status as a former generator of waste at a location remote from Plaintiffs' properties cannot serve as the basis for a private nuisance claim. Accordingly, Plaintiffs' cause of action for private nuisance must be dismissed.

**E. Plaintiffs' Public Nuisance Claim Must Be Dismissed**

The Supreme Court of Rhode Island defines a public nuisance as "'an unreasonable interference with a right common to the general public.'" Hydro-Mfg., Inc., 640 A.2d at 958 (quoting Citizens for Pres. of Waterman Lake v. Davis, 420 A.2d 53, 59 (R.I. 1980)). See also W. PROSSER, TORTS, § 88, p. 583 (4th ed. 1971) (defining a public nuisance as "an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty's subjects") (internal quotation omitted).

In Iafrate v. Ramsden, the Rhode Island Supreme Court upheld the lower court's grant of a motion to dismiss a public nuisance claim for failure to allege interference with "any interest of plaintiffs *common to the general public*." 96 R.I. 216, 222 (R.I. 1963) (emphasis added). The Court noted that the injury suffered by plaintiffs caused by the

[8] To be neighboring is to be situated near one another, to have a common boundary or edge, or to be touching. *WordNet ® 2.0, © 2003 Princeton University.*

[9] See also Hennessey v. Pyne, 694 A.2d 691, 695 (R.I. 1997) (owner of a condominium could not claim private nuisance as a result of errant golf balls because, among other things, plaintiff and golf course were not "neighbors in the usual sense of the word"); Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1057-58 (D.N.J. 1993) ("private nuisance is confined to situations where one person's property use interferes with another's use of *neighboring* or *adjoining* property") (emphasis added).

collapse of a wall located on city-owned property "affected only persons on the city's premises, not the general public." Id. Similarly, in Hydro-Mfg., Inc., the Court held that the plaintiff could not sustain an action for public nuisance because the damages alleged as a result of contamination to plaintiff's own property "were in [plaintiff's] exercise of its private-property right, not in the exercise of a public right." 640 A.2d at 958. See also Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, 691 N.W.2d 658, 670 (Wis. 2005) (defining a public nuisance as "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community").

In the present case, Plaintiffs allege injuries to their properties and the reduction of their property values as a result of the contamination of those properties, not the properties used in common by all residents of Tiverton or any larger political subdivision. As such, they allege a harm only in the exercise of their *private property rights* and not in the exercise of any *public* right. Moreover, the mere fact that a large number of private property parcels have allegedly been affected by contamination does not convert this private injury into a public harm:

> *Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public.* It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so

> deprives all members of the community of the right to fish, it becomes a public nuisance.

Restatement (Second) Torts, § 821B, Comment G (1979) (emphasis added).[10] See also Milwaukee Metro. Sewerage Dist., 691 N.W.2d at 670 ("the distinction between a private and public nuisance is 'not the number of persons injured but the character of the injury and of the right impinged upon'") (quoting Costas v. City of Fond du Lac, 129 N.W.2d 217, 220 (Wis. 1964)).

Because Plaintiffs do not and cannot allege a harm to any public right, their cause of action for public nuisance fails to state a claim and must be dismissed.

### F. Plaintiffs' Demand For Punitive Damages Lacks Factual Support And Must Be Stricken

In order to properly plead a demand for punitive damages, "one must allege that the other party acted 'with the intent to cause harm.' Hence, merely reckless conduct that is not malicious, wanton, or willful is insufficient to support a claim for punitive damages." Hayes v. Don Law Co., 1996 U.S. Dist. LEXIS 22814, * 9-10 (D.R.I. June 20, 1996) (quoting Wilson Auto, 778 F. Supp. at 107); Regan v. Cherry Corp., 706 F. Supp. 145, 153 (D.R.I. 1989).

Here, Plaintiffs have not alleged that FRGC acted with the requisite malice or wickedness. Moreover, the Complaint does not contain a single factual allegation that supports such a contention. As the court held in Wilson Auto, "[Plaintiff] has not alleged any facts that would suggest that [defendant] acted with malice -- with an intention to cause harm. By charging [defendant] with wantonness and outrageousness, [plaintiff]

---

[10] The Rhode Island Supreme Court in Hydro-Mfg., Inc. relied on the Restatement (Second) of Torts. See id., 640 A.2d 958.

alleges gross recklessness, but nothing more." 778 F. Supp. at 107. Accordingly, Plaintiffs' demand for punitive damages must be stricken.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: Providence, Rhode Island
February 8, 2006

Respectfully Submitted,

**ADLER POLLOCK & SHEEHAN P.C.**

John A. Tarantino (#2586)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

*Attorneys for Defendant Southern Union Company and its division New England Gas Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February, 2006, a copy of the foregoing was mailed first class U.S. postage/~~hand delivered~~ to the following:

Russell X. Pollock, Esq.
Campbell, Campbell, Edwards & Conroy, PC
One Constitution Plaza
Boston, MA 02129

Paul Revere, III, Esq.
Law Offices of Paul Revere, III
226 River View Lane
Centerville, MA 02632

*370961_1.doc*