UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al. | : | |
| vs. | : | C. A. No. 05-221T (Related Case No. 05-274T) |
| NEW ENGLAND GAS COMPANY, INC. | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT NEW ENGLAND GAS COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiffs hereby oppose Defendant New England Gas Company's Motion to Dismiss Plaintiffs' First Amended Complaint. In support thereof, Plaintiffs hereby rely on the accompanying Memorandum of Law.

DATED: September 30, 2005

Respectfully Submitted,

Robert J. McConnell (#3888)
Jonathan D. Orent
Motley Rice LLC
321 South Main Street
Providence, RI 02940

David C. Strouss
Brad J. Mitchell
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts
McRoberts, Roberts & Rainer
51 State Street
Boston, MA 02109

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2005, a copy of the foregoing was mailed to:

**ADLER POLLOCK & SHEEHAN P.C.**

John A. Tarantino, Esq.
Patricia K. Rocha, Esq.
David A. Wollin, Esq.
Kristen W. Sherman, Esq.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

**WATSON, BISHOP, LONDON & BROPHY**

Christina Dodds
The Littlefield Building
106 E. 6thh Street, Suite 700
Austin, TX 78701

**KASOWITZ, BENSON, TORRES & FREIDMAN, LLP**

Eric D. Herschmann
1633 Broadway
New York, NY 10019

Case 1:05-cv-00221-T Document 34 Filed 10/03/2005 Page 3 of 24

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al. | : | |
| vs. | : | C. A. No. 05-221T (Related Case No. 05-274T) |
| NEW ENGLAND GAS COMPANY, INC. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT NEW ENGLAND GAS COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## INTRODUCTION

## STANDARD OF REVIEW

Dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is only proper when it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 46 (1957). When the court reviews a claim with respect to a Rule 12(b)(6) motion to dismiss, the court must accept as *true all factual* allegations contained in the complaint and draw all reasonable inferences from those assertions in the Plaintiff's favor, See Pharmaceutical Research & Mfrs. of America v. Nicholas, 353 F.Supp.2d 231 (D.R.I. 2005).[1] Defendants' motion will fail if "the well-pleaded facts, taken as true, justify recovery on any supportable legal theory." Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir.2000). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim." U.S. v. Yale New

---

[1] The Federal Rules of Civil Procedure require only notice pleading, or "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley, U.S. 41, 355 U.S. at 47. The plaintiff is merely required to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id. See also Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998).

Haven Hosp., 727 F.Supp. 784, 786 (D.Conn. 1990),. (citations omitted). Under modern procedural rules, "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). "The modern trend is to read the pleadings broadly and realistically rather than technically." DeMartin v. Yale-New Haven Hospital, , 494 A.2d 1222 (1985).

## ARGUMENT

### I. PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION IN NEGLIGENCE AGAINST NEW ENGLAND GAS COMPANY

New England Gas Company's ("Defendant") claim that it owes no duty to Plaintiffs fails because (1) the harm suffered by Plaintiffs was a foreseeable risk posed by a release of its hazardous waste; (2) case law recognizes a duty under Rhode Island common law owed by a polluter to parties damaged by the pollution; and (3) Plaintiffs have alleged the Defendant violated the Rhode Island waste management statute and those violations are evidence of the existence of a duty.

#### A. The Amended Complaint alleges that the injuries suffered by the Plaintiffs were foreseeable risks posed by Defendant's releasing hazardous waste, which establishes a legal duty that gives rise to a cause of action in negligence.

Rhode Island courts recognize that there is no clear cut formula for determining the existence of a duty and thus make the determination on a case-by case basis. Martin v. Marciano, 871 A.2d 911, 915 (R.I. 2005). The United States District Court in Rhode Island stated that "foreseeability is the linchpin in determining the existence of any duty owed." Gray v. Derderian, 365 F.Supp.2d 218, 227 (D.R.I. 2005) (citing to the focus on foreseeability in the "bellweather of tort cases[,]" Palsgraf v. Long Island Ry Co., 162 N.E. 99, 100 (N.Y. 1928)).

The Derderian case involved a motion to dismiss a negligence claim brought by plaintiffs, patrons at The Station nightclub, who suffered damages when polyurethane foam marketed by the defendants as soundproofing burned. Id., 365 F.Supp.2d at 226. The court

found the plaintiffs had alleged that the product in question was hazardous, that the defendants knew of the hazards, and that the defendants had failed to warn of the hazards, and ruled:

> Defendants owed a duty of reasonable care to avoid foreseeable risks posed by their hazardous product. Because risk imports relation, Defendants' duty increases in proportion to the hazards posed by the product. . . . The specific chain of events that led to the (injury) need not be anticipated by Defendants. (internal quotations and citations omitted).

Id. The Court determined that the risk in question, the fire, was a foreseeable outcome of defendants' acts in dealing with a hazardous product, even if the defendants did not foresee the specific events leading to The Station fire. Id. at 228. Accordingly, as "foreseeability is the linchpin in determining the existence of any duty owed," the Court held that "for the purposes of the Motions to Dismiss, the Defendants owed a duty to Plaintiffs." Id.

As with the Plaintiffs in Derderian, the Plaintiffs in the present case have alleged: (1) Defendant's material is hazardous (¶¶ 1, 21, 28); (2) the Defendant "knew or should have known that the hazardous substances Defendant handled, disposed of and/or released would cause harm to the Plaintiffs" (¶ 31); and (3) that Defendant failed to warn of the dangers associated with this hazardous material (¶ 32). The Plaintiffs have further alleged that the Defendant's hazardous material was used as fill in a residential area of Tiverton (¶¶ 1, 14, 17-22); and that the presence of Defendant's hazardous material in their residential area and on their properties has caused them to suffer damages including property damage (¶¶ 1, 17-18, 22-26).

The foregoing facts, accepted as true for purposes of a Rule 12(b)(6) motion, clearly permit the finding that the Defendant owed a duty to Plaintiffs. As in Derderian, the Defendant owed a duty of reasonable care to avoid foreseeable risks posed by their hazardous material. It was a foreseeable risk that as a result of the Defendant's failure to warn of the hazardous nature of the coal gasification waste it produced and released, there would be an improper use of the

material, here as fill in a residential area, resulting in property and other damages. As such, Plaintiffs have properly alleged the Defendant owed them a duty and the negligence count should stand.

**B. Courts have found the existence of a duty under Rhode Island law where Plaintiffs have plead they were damaged by contaminated waste released by the Defendant.**

Under Rhode Island common law a polluter does owe a duty to a party damaged by the pollution. Pine v. Shell Oil Co., 1993 WL 389396 (D.R.I. 1993). In Pine, the State of Rhode Island brought a negligence claim against Shell for damages suffered when contamination from a Shell gasoline migrated off-site. See id. The court found the plaintiff had sufficiently alleged duty and denied the motion to dismiss the negligence count. See id. at *6. Moreover, it is clear under Rhode Island common law that a polluter owes a duty to neighbors damaged by the release of pollution who were not subsequent purchasers of property the defendant had leased. Wilson Auto Enter., Inc. v. Mobil Oil Corp., 778 F.Supp. 101, 105 (D.R.I. 1991).[2]

The Plaintiffs in the present case are similar in status to the plaintiff in the Pine case and the neighbors in the Wilson case—they were not subsequent purchasers of property owned or leased by the Defendant and were damaged by contamination released by it. Thus, Plaintiffs have sufficiently alleged duty under Rhode Island common law owed by the releaser of contamination to a party damaged by the contamination.

**C. The Amended Complaint alleges specific facts that the Defendant violated the Rhode Island Waste Management Act, Rhode Island General Laws § 23-19.1, which establishes a legal duty that gives rise to a cause of action in negligence.**

[2] The court in Wilson contrasted the status of the neighbors from the status of the plaintiff, who was not owed a common law duty as a subsequent purchaser of the property the defendant had leased. Id. Indeed, the Pine court distinguished Wilson on these grounds and stated that Wilson "suggests that a negligence claim might lie for the owners of neighboring property." Pine at *6.

Under Rhode Island law, "a violation of a statute, which itself creates a duty to the public, may be relied on by a plaintiff as evidence of the existence of a duty . . . ." Sanchez v. Guy, 2004 WL 2821667 at *4 (R.I. Super. 2004)(citations omitted). The violation of a statute is evidence of the existence of a duty when: (1) the duty imposed by the statute was for the safety of the public; and (2) the plaintiff is within the class of people whom the statute was designed to protect. See Clements v. Tashjoin, 92 R.I. 308, 313-14(1961); Paquin v. Tillinghast, 517 A.2d 246, 248 (R.I. 1986). Plaintiffs have clearly established the existence of a duty based on the violation of a statute. The Amended Complaint alleges a violation of the Rhode Island Waste Management Act—Rhode Island General Laws § 23-19.1.[3] See ¶¶29, 32(b), 60-62. The Waste Management Act was enacted "[t]o protect the environment and the public health and safety from the effects of the improper, inadequate, or unsound management of hazardous wastes." R.I. Gen. Laws § 23-19.1-3(1). Plaintiffs are within the class of people—"the public" —whom this statute was designed to protect. Thus, Plaintiffs have sufficiently alleged there was a duty and Defendant's Motion to Dismiss the negligence count must be denied.

## II. PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR GROSS NEGLIGENCE AGAINST NEW ENGLAND GAS COMPANY

Rhode Island recognizes a claim for gross negligence and thus Defendant's motion to dismiss the gross negligence claim should be denied. See Contois v. West Warwick, 865 A.2d 1019 (R.I. Dec 17, 2004) "To distinguish between negligence and 'gross negligence is not to indulge in technicalities. There is a clear and significant difference between these two standards; one requires only a showing of unreasonableness while the other demands evidence of near recklessness or shockingly unjustified and unreasonable action." Leite v. Providence, 463

---

[3] The Waste Management Act applies retroactively and thus acts occurring prior to enactment can constitute a violation of the statute. See International Oil Co. v. United States, 925 F. Supp. 104, 110 (D.R.I. 1996).

Case 1:05-cv-00221-T Document 34 Filed 10/03/2005 Page 8 of 24

F.Supp. 585, 591 (D.C.R.I. 1978). The Amended Complaint specifically alleges that Defendant intentionally gave its hazardous waste as fill with a reckless disregard of the consequences to life or property of another. See ¶¶ 36-41. As a result, the gross negligence count should stand.

## III. DISPOSAL OF HAZARDOUS WASTE AS FILL CONSTITUTES AN ULTRAHAZARDOUS AND ABNORMALLY DANGEROUS ACTIVITY AND PLAINTIFFS CLAIMS FOR STRICT LIABILITY SHOULD STAND

Strict liability attaches when a plaintiff's injuries are proximately caused by some ultrahazardous or abnormally dangerous activity of the defendant. See Splendorio v. Bilray Demolition Co. Inc., 682 A.2d 461, 465 (1996). Whether a defendant has engaged in an ultrahazardous or abnormally dangerous activity is a question of law. See id. In evaluating whether an activity should be classified as abnormally dangerous Rhode Island has adopted the factors set forth in the Restatement of Torts. See id., see also Olshansky v. Rehrig Intern, 872 A.2d 282 (R.I. May, 03, 2005.) Thus, the court is to consider:

a. the existence of a high degree of risk of some harm to the person, land or chattels of others;
b. the likelihood that the harm that results from it will be great;
c. an inability to eliminate the risk by the exercise of reasonable care;
d. the extent to which the activity is not a matter of common usage;
e. the inappropriateness of the activity to the place where it is carried on; and
f. the extent to which its value to the community is outweighed by its dangerous attributes.

3 Restatement (Second), Torts §520. All of these factors need not be present for an activity to be considered abnormally dangerous. Comment (f) to §520 provides that:

> [i]n determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance. Any of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand it is not necessary that each of them be present, especially if others weigh heavily.

Id. "The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict

liability for the harm that results from it, even though it is carried on with all reasonable care." Id.

The Defendant alleges the Amended Complaint fails to state a claim for relief because "the mere handling and disposal of hazardous waste is not an abnormally dangerous activity." Defendants Memo of Law, p.9. Defendant misconstrues both the law and the Plaintiffs' claims.

Contrary to the Defendant's assertion, Rhode Island has not precluded claims of strict liability based on the handling and disposal of hazardous waste. In fact, the Supreme Court of Rhode Island in Wood v. Picillo, 433 A.2d 1244 (1982) explicitly raised the specter of strict liability claims for damage from the improper disposal of hazardous waste noting:

> [i]t could well be argued that one who utilizes his land for abnormally dangerous activities or for storage of abnormally dangerous substances maybe strictly liable for resulting injuries, even in the absence of a finding of nuisance or negligence.

Id. 1250 fn 7. The Wood court affirmed the trial court's judgment against the defendant, who had created what the trial court deemed "a chemical nightmare" by dumping and/or burying toxic and hazardous chemicals directly onto permeable soil, on public and private nuisance grounds. See Wood, 443 A.2d at 1245-46. The absence of an appellate court decision imposing strict liability for the disposal of hazardous waste does not provide a rational basis for ipso facto holding the doctrine should not be applied to Superior Courts for the disposal of hazardous waste. See Wood, 443 A.2d at 1250; P.R.I.C.E., Inc. v. Kenney, 1998 WL 417591 at *8 (Conn. Super. 1998).

Numerous courts throughout the country have expressly held that the disposal of hazardous and toxic wastes may constitute abnormally dangerous or ultrahazardous activities warranting the application of strict liability. See e.g. Lutz v. Chromatex, Inc., 718 F.Supp. 413, 430 (M.D.Pa. 1989) (holding the storage and disposal of hazardous substances may constitute an

abnormally dangerous activity); P.R.I.C.E., 1998 WL 417591 (concluding that the disposal of hazardous and toxic waste may constitute an ultrahazardous activity )[4] This is especially true where the hazardous waste was disposed of directly onto soils, subsoils, surface and/or groundwaters. See e.g. Hanlin Group, Inc. v. International Minerals & Chem. Corp, 759 F.Supp. 925, 934 (D.Me. 1990)(finding the disposal of hazardous chemicals directly onto soils and a river near was an ultrahazardous activity for which the defendant may be held strictly liable).[5]

The Defendant cites two distinguishable cases to support its claim that strict liability does not apply to the handling and disposal of toxic and hazardous waste in Rhode Island. In Splendorio, the court reviewed claims by owners of property adjacent to demolition company wrecking yard where debris from an asbestos remediation project had been illegally stored. See id. at 463. The engineering firm, who inspected and found the asbestos at the property to be demolished, was sued based on strict liability associated with the asbestos. The engineering firm moved for and was granted summary judgment on the grounds that it took no part in the physical demolition of the property or in the placement of the debris at the site at issue. See id. at 463-64, 466. The court specified that it was the demolition contractor's "unanticipated and unlawful

[4] See also Daigle v. Shell Oil Co., 972 F.2d 1527, 1544 (10th Cir. 1992)(under CO law and facts of case, disposal of hazardous waste constitutes abnormally dangerous activity and explaining that the Restatement factors "require a particularized inquiry. . . To impose an inflexible strict liability rule on all blasting without consideration of the circumstances would be just as incorrect as [the defendant's] assertion of the opposite rule regarding hazardous wastes); Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co., 842 F.Supp. 475, 478 (D.N.M. 1993) (holding the storage and disposal of toxic chemical waste in NM constituted an abnormally dangerous activity and requiring a particularized, case-specific inquiry since to do otherwise would render the six factors of the Restatement superfluous.); Sterling v. Velsicol Chem. Corp., 647 F.Supp. 303, 315 (W.D. Tenn. 1986) (holding that under TN law storing and disposing of hazardous wastes was an ultrahazardous activity subjecting the defendant to strict liability); Branch v. Western Petroleum, 657 P.2d 267 (1982)(finding that under UT law defendant could be held strictly liable for the disposal of toxic formation water from its oil refinery).

[5] See also, T & E Indus. Inc. v. Safety Light Corp., 123 N.J. 371 (1991)(ruling that the processing, storage and disposal of radium tailings by dumping them on unimproved portions of a site was an abnormally dangerous activity under New Jersey law); Mather v. Birken Mfg Co., 1998 WL 920267 at *7 (Conn. Super. 1998)(finding the disposal of hazardous wastes from metal finishing and related manufacturing processes directly into soil and groundwater constituted ultrahazardous activity); State v. Ventron, 94 N.J. 473, 492 (1983)(finding that "no safe way exists to dispose of mercury by simply dumping it onto land or into water" and defendant could be held strictly liable for such disposal activities.).

Case 1:05-cv-00221-T Document 34 Filed 10/03/2005 Page 11 of 24

actions" which gave rise to the harms claimed by the plaintiff, and therefore, the engineering firm could not be held strictly liable for the alleged injuries. Id. at 466. Nowhere does the Splendorio court hold, or even assert in dicta, that the illegal storage and handling of the asbestos waste by the demolition contractor did not meet the standard of an ultrahazardous activity. The other case cited by the defendant, Toledo v. Van Waters & Rogers, Inc., 92 F.Supp. 2d 44 (D.RI 2000), is also distinguishable. There the district court did not discuss the application of strict liability to the handling and disposal of hazardous substances. Rather, the court's ruling was restricted to the transportation and packaging of dangerous chemicals, which the court found takes place daily and may be made safe through the exercise of reasonable care. See id. at 56.

In the instant case, it is the Defendant's disposal practices and actual disposal of hazardous waste which caused harm to the Plaintiffs and citizens of Tiverton which are under scrutiny, not the unanticipated and illegal actions of a third party. The disposal of hazardous waste as fill in a residential area without other precautions is not a daily occurrence, nor can the disposal of untreated hazardous wastes directly onto soils be made reasonably safe. Indeed the high degree of risk and likelihood of great harm resulting from such disposal actions and the resulting contamination was recognized in this case by the Town of Tiverton which issued an "emergency moratorium" preventing any excavation on the Plaintiffs' properties. See ¶ 24.

As the Restatement (Second) recognizes, the location of the activity at issue is important factor in determining whether the activity is ultrahazardous. The Defendant emphasizes that some courts have held the storage of hazardous materials in certain circumstances, to be outside the realm of strict liability. However, other courts have acknowledged that storage, when done in an inappropriate location or manner can become an abnormally dangerous activity. See Tutu Wells Contamination Litig. v. Laga Indus., Ltd., 846 F. Supp. 1243 (D. V.I. 1993)(finding that

the risk of seepage and contamination rendered the storage and maintenance of hazardous waste tanks above an aquifer used for the public water supply abnormally dangerous).

In the instant case, the waste was disposed of in a residential area and/or given to contractors to use as fill under public roads and streets, surrounding public water and sewer lines and for use in the construction of residential dwellings. Therefore there was a high likelihood that public would come into contact with the hazardous waste, either through activities on owners' properties or by repairs to the public utilities. Certainly when hazardous and toxic waste is not just stored, but is disposed of directly into the soils and would leach into groundwater of a residential area, the disposal location was inappropriate. The Defendant cannot argue that it did not know where the hazardous materials were going to be used in residential development to avoid strict liability. First giving hazardous waste for fill to contractors rather than paying for proper disposal and failing to find out what the fill was going to be used for make it liable for wherever it was dumped, and second where there are substantial drinking water resources in the immediate area, failing to ensure that its waste was not disposed in a manner that would impact these resources makes the Defendant strictly liable for damage to these resources.

The Amended Complaint states sufficient facts to support a strict liability cause of action. The Plaintiffs allege that the Defendant deliberately filled the residential area where the Plaintiffs live and own property with coal gasification waste containing lead, arsenic, cyanide and other hazardous materials. See ¶ 22. The Plaintiffs further allege that subsurface investigations beneath the public roads and streets abutting and or in close proximity to the Plaintiffs' properties revealed the presence of hazardous substances including total petroleum hydrocarbons (TPH), semi-volatile organic compounds (SVOCs), lead, arsenic, and cyanide. See ¶ 12. Additionally poly-aromatic hydrocarbons (PAHs), cyanide and naphthalene were found in the

soils at levels exceeding the Residential and Industrial/Commercial Direct Exposure Criteria. See ¶ 13. As a result of the contamination, an "emergency moratorium" was issued preventing excavation on some of the properties. See ¶ 23-25. The Plaintiffs allege that the Defendants failed to properly transport store and dispose of the hazardous waste in violation of its statutory duties. See ¶ 32. Moreover, the Plaintiffs assert that the Defendant failed to remove such contamination and failed to warn the Plaintiffs of the hazards that it had created. See ¶ 32, 40. As a result of the Defendant's acts and omissions, the Plaintiffs allege they have suffered and will continue to suffer substantial injury. See ¶ 33, 41, 45, 49, 54, 59. Given the extent and degree of contamination it is likely, and indeed has been demonstrated, that the harm from the Defendant's acts and omissions has been great. Id. Wherefore, Defendant's Motion to Dismiss Plaintiffs' count for strict liability must be denied.

## IV. PLAINTIFFS HAVE PLED A VIABLE CLAIM FOR PRIVATE NUISANCE

Plaintiffs' claim for private nuisance must not be dismissed since they have pled the essential elements of a private nuisance cause of action.

> [T]he essential element of an actionable nuisance is that the plaintiffs have suffered harm or are threatened with injuries that they ought not to have to bear.... A private nuisance arises from the unreasonable use of one's property that materially interferes with a neighbor's physical comfort or the neighbor's use of his real estate. Weida v. Ferry, 493 A.2d 824 (R.I. 1985) (citation omitted).

Paragraph 48 of the Amended Complaint sets forth the use of Defendant's property that has materially interfered with the Plaintiffs' comfort and use of their properties. It states,

> The Defendant, by its handling, disposal of, and release of hazardous substances emanating from its own property, including coal gasification waste material containing lead, arsenic and cyanide used as fill in the Emergency Moratorium Area, has materially interfered with the Plaintiffs' physical comfort and/or use of their property and has thereby created a private nuisance.

As alleged in the Amended Complaint, the hazardous coal gasification waste material generated by Defendant on its property, that was improperly disposed by the Defendant in the Emergency Moratorium Area has caused the Plaintiff's injury.

Defendant's reliance on Saco Steel Co. v. Saco Defense, Inc., 910 F.Supp.803 (D.Me. 1995) is misplaced. As claimed by Defendant, the Court in Saco did find the "[d]efendant's alleged activity on it's own land, generating hazardous substances, did not, by itself, cause injury to Plaintiff's neighboring land". Id. at 812. However, it so found because it was the Plaintiffs who both bought Defendants hazardous property and transported it themselves to their own property. Id. This factually is in stark contrast to the present case.

Further, Defendant's reliance on Hooksett School Dist. v. W.R. Grace, 617 F.Supp.126 (D.N.H. 1984) is also misplaced. In their private nuisance claim, Plaintiffs' are suing Defendant as a property owner that created a nuisance on its property, i.e., hazardous coal gasification waste. Defendant as property owner, then unreasonably transported or facilitated the transport of the hazardous waste to Tiverton, thereby interfering with Plaintiff's use and enjoyment of their properties. "The creator of the nuisance is responsible in his capacity as a property owner if a nuisance arises from the use of property in an unreasonable matter" Id. at 153.

Defendant's claim that Plaintiffs are not "neighbors" is also wrong. In Wood, the defendant was liable for creating a private nuisance where "the chemicals present on Defendant's property…left unchecked, would eventually threaten wildlife and humans well downstream from the dumpsite". Id. at 1274 (emphasis added). Likewise in discussing neighboring properties in Hydro-Manufacturing, Inc. v. Kayser Roth Corp. 640 A.2d 950 (R.I.1994), the Court made the distinction that in a private nuisance the offensive condition must originate outside of the Plaintiff's land, not from the Plaintiff's own property. Id. at 957, which is the case here.

Case 1:05-cv-00221-T Document 34 Filed 10/03/2005 Page 15 of 24

## V. RHODE ISLAND LAW PROVIDES A CAUSE OF ACTION IN PUBLIC NUISANCE FOR ENVIRONMENTAL CONTAMINIATION CASES

The Defendant has alleged that the Plaintiffs' claim of public nuisance must be dismissed for lack of an "interference with a public right." Defendant's Motion Papers at 14. However, there is a long line of Rhode Island cases, which hold that if environmental contamination, like that present in the current case, poses a threat of harm to the public such that it amounts to "an unreasonable interference with a right common to the general public." Then public nuisance will apply. The Rhode Island Supreme Court has recognized for almost a century that public nuisance provides a cause of action in environmental contamination and pollution cases. For example, in Payne & Butler v. Providence Gas Co., 77 A. 145 (R.I. 1910), the Rhode Island Supreme Court considered whether a manufacturer that polluted public and/or private waters could be found liable for creating a public nuisance. In finding liability, the court stated:

> [A]ny manufacturer who allows his deleterious waste product to contaminate the waters of the State, be they public or private is liable to any person who is injured thereby in his private capacity and apart from being merely one of the public, provided he can trace to its origin the noxious substance where he is damaged. Id. at 151.[6]

In 1982, the Rhode Island Supreme Court, in Wood issued one of the seminal opinions in the country considering the applicability of public nuisance to modern environmental contamination and pollution cases.[7] In Wood, the Attorney General commenced a private and public nuisance suit against certain defendants who owned and maintained a hazardous waste dump on their property. The Rhode Island Supreme Court upheld the trial court's determination that the defendants had created a public nuisance because their storage of the hazardous waste

---

[6] See also Braun v. Iannotti, 189 A. 25 (1937)(public nuisance created by emitting smoke and soot from smokestack).

[7] See Tom Kuhnle, The Rebirth of Common Law Actions for Addressing Hazardous Waste Contamination, 15 Stan. Envtl. L.J. 187, 214 (1996)(recognizing Rhode Island was one of the first states to uphold a public nuisance claim in a modern hazardous waste contamination case. )

posed a threat to the health of humans and wildlife. Id. at 1248. The court also found that the "essential element of an actionable nuisance is that persons have suffered harm or are threatened with injuries that they ought not have to bear." Id. at 1247-49 (emphasis added). To demonstrate an interference with a public right, the magnitude of the harms suffered by the all of the plaintiffs taken together amount to an interference with a public right:

> [p]ublic also is the nuisance committed 'in such place and in such manner that the aggregation of private injuries become so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community, which may properly be the subject of a public prosecution.

New York v. Waterloo Stock Car Raceway, Inc., 409 N.Y.S.2d 40, 43 (N.Y. Sup. 1978)[8];

Despite the century of Rhode Island precedent in environmental actions, as set forth above, the Defendant has moved to dismiss the plaintiffs' public nuisance count, by arguing that the Plaintiff's claims involve private property rights. Defendant's Memo at 14. However, numerous courts have concluded that "a nuisance may be simultaneously public and private when a considerable number of people suffer an interference with their use and enjoyment of land…The torts are not mutually exclusive." Armory Park Neighborhood Ass'n v. Episcopal Community Servs., 712 P.2d 914, 917 (Ariz. 1985), see also Wood, 443 A.2d 1244. Therefore, this Court should conclude that Plaintiff's have sufficiently alleged a cause of action for public nuisance and deny the Defendant's Motion to Dismiss.

## VI. PLAINTIFFS SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR INFLICTION OF EMOTIONAL DISTRESS

### A. The Amended Complaint alleges specific facts that Defendant tortiously interfered with Plaintiffs' use and enjoyment of their property, which establishes a cause of action for recovery of damages for mental suffering.

[8] See also City of Virginia Beach v. Murphy, 389 S.E.2d 462, (Va. 1990)(aggregation of private injuries becomes so great as to constitute public harm) State ex rel. Tollefson v. Mitchell, 171 P.2d 245, 246 (Wash. 1946) ("Public also is the nuisance committed 'in such place and in such manner that the aggregation of private injuries becomes so great and extensive as to constitute a public annoyance and inconvenience, and a wrong against the community, which may be properly the subject of a public prosecution.")

Rhode Island courts have long held property-loss victims such as the Plaintiffs are entitled to damages for annoyance, mental suffering and anxiety caused by a defendant's negligent interference with their use and enjoyment of their property. See Hawkins v. Scituate Oil Co., Inc., 723 A.2d 771, 772-73 (R.I. 1999)(citations omitted). To recover such mental suffering damages, Plaintiffs need only show Defendant tortiously interfered with their use and enjoyment of their property. Hawkins, 723 A.2d at 773. Plaintiffs have clearly alleged damages resulting from Defendant's tortious interference with Plaintiffs' use and enjoyment of their property. ¶¶ 1, 16-34, 59. Thus, Plaintiffs have alleged a cause of action for recovery of damages for mental suffering and Defendant's motion to dismiss Count VI should be denied.

**B. In the alternative, the Amended Complaint sufficiently alleges Negligent Infliction of Emotional Distress.**

Where emotional distress has been claimed on the basis of Defendant's negligence, the Court may review the claim according to the standards of negligent infliction of emotional distress. See Perrotti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005).[9] Negligent infliction of emotional distress requires that Plaintiffs: (1) be "those within the zone of danger who are physically endangered by the acts of a negligent defendant;"[10] and (2) "suffer serious emotional injury that is accompanied by physical symptomatology." Id. at 636-37. Contrary to Defendant's argument, Plaintiffs do not need to show extreme conduct by the Defendant to establish a claim for negligent infliction of emotional distress. See Greico v. Napolitano, 813 A.2d 994, 997-98 (R.I. 2003) (claim is based on negligent conduct by the defendant and not extreme conduct).[11]

[9] It is undisputed that mental suffering or emotional distress may be an element of damages arising from negligent conduct. See id. D'Ambra v. U.S., 354 F.Supp. 810 (D.R.I. 1973).

[10] Or plaintiffs must be "bystanders related to a victim whom they witnessed being injured." *Id.*

[11] Notwithstanding, the Plaintiffs have sufficiently plead extreme conduct. The Amended Complaint alleges specific facts that the Defendant released coal gasification waste containing arsenic, lead, cyanide and other hazardous substance; that this coal gasification waste was used as fill on undeveloped land in a residential area; and that homes were built on this contaminated fill. ¶¶ 1, 16-22. This conduct may reasonably be regarded as extreme and

As Plaintiffs have alleged negligence in this case, there is a predicate of liability to support a claim for negligent infliction of emotional distress. See Ostroff v. Federal Insurance Deposit Corp., 847 F.Supp. 270, 280 (D.R.I. 1994).

The Plaintiffs have alleged that negligent acts and omissions by defendant included releasing hazardous coal gasification waste that has caused soil and ground water contamination in a residential area of Tiverton. ¶¶ 1, 16-22. The Plaintiffs have also alleged they are within the zone of danger and physically endangered by defendant's negligent acts—all of Plaintiffs' properties is within the borders of the "Emergency Moratorium Area". ¶¶ 23-26. Lastly, Plaintiffs have alleged they have suffered severe emotional distress. ¶ 59. [12] Thus, Plaintiffs have properly alleged a count for negligent infliction of emotional distress.

## VII. THE PLAINTIFFS HAVE A CAUSE OF ACTION UNDER RI GEN. LAWS § 23-19.1-22, THE HAZARDOUS WASTE MANAGEMENT ACT

Despite, the Defendant's contention that "[i]t is well settled that this statute does not create a private right of action," Defendant's Motion Papers at 19, this actually is an issue of first impression. Hotel Associates, LLC v. HMS Assoc., 2004 WL 422812, 6 (R.I. Super. 2004). While the Rhode Island Supreme Court has not expressly addressed whether the statute creates a private right of action, it has nonetheless ruled on the merits of private cases brought under the Hazardous Waste Management Act ("HWMA" or the "Act"), R.I. Gen. Laws § 23-19.1 et seq. See Gryguc v. Bendick, 510 A.2d 937 (R.I. 1986)( In a suit brought pursuant to the permit section of the statute, the Court did not dismiss for lack of a cause of action.) Experts in the field agree that the HWMA created a private cause of action, as reflected in a report to the United States Congress, by the Superfund Section 301(e) Study Group which stated that Rhode Island

---

outrageous. See Norton v. McOsker, 407 F.3d 501, 510 (1st Cir. 2005); Kassel v. U.S. Veterans Admin., 682 F.Supp. 646, 659 (D.N.H. 1988). Such conduct also supports a claim for intentional infliction of emotional distress. Id.

[12] As in Greico, Plaintiffs in the present case will demonstrate the severe emotional distress was accompanied by physical symptomatology through evidence such as testimony. *Greico,* 813 A.2d at 997-98.

had created a statutory private cause of action for damages due to hazardous wastes.[13] The report states:

> Several state statutes reiterate the availability of common law remedies, but only four states have created private statutory causes of action for personal injury due to hazardous wastes. Two of these states, North Dakota and Rhode Island, have created a private cause of action for personal injury that reflects a negligence per se approach.... The Rhode Island Hazardous Waste Management Act imposes liability for all damages, losses, or injuries' resulting from disposal of hazardous waste in an authorized manner or location.

Id. at 75 (footnotes omitted) as quoted in Charter International Oil Co. v. United States, 925 F.Supp. 104, 114 (D.R.I. 1996) at fn 4.

Ordinarily, when a statute is clear and unambiguous a court must adopt its plain and ordinary meaning. In re Bernard H., 557 A.2d 864, 866 (R.I.1989). It must be presumed that the Legislature intended every word, sentence, or provision to serve some purpose and have some force and effect, Id. Moreover, the Rhode Island Supreme Court will not interpret a statute in a manner that would defeat the underlying purpose of the enactment. Dias v. Cinquegrana, 727 A.2d 198, 199-200 (R.I.1999) If a statute is ambiguous, the Court's interpretation should be based on policy considerations. Id. at 200. Therefore, when this Court looks at the language of the statute, giving full effect to all words and phrases, and examines the underlying policies of the Act it must conclude that a private cause of action exists under the § 23-19.1-22 of the Hazardous Waste Management Act ("HWMA" or the "Act"), R.I. Gen. Laws § 23-19.1 et seq.

In this case, the Court should conclude that the language of the statute unambiguously creates a private cause of action under the HWMA. However, should the Court need to engage in any statutory analysis, it must liberally interpret the Act to include a private cause of action to conform to the legislatures stated objectives. In the text of the HWMA, the Legislature declares

[13] Superfund Section 301(e) Study Group, Injuries and Damages from Hazardous Wastes–Analysis and Improvement of Legal Remedies, 97th Cong., 2d Sess., Serial No. 12 (Comm.Print 1982).

Case 1:05-cv-00221-T ...ument 34 Filed 10/03/2005 Pa... 20 of 24

"[t]he provisions of this chapter shall be interpreted and construed liberally in aid of its declared purpose." R.I.Gen.Laws § 23- 19.1-20. Thus the Court must liberally interpret the language to effectuate the statutory goal of protecting both the environment and the health of the state's citizens. R.I. Gen. Laws § 23-19.1-20.

The HWMA imposes liability for "all damages, losses, or injuries, including environmental, which result directly or indirectly from the discharge." R.I.Gen.Laws § 23-19.1-22(a). The phrase "including environmental" indicates that nonenvironmental damages, such as property damage or personal injury, are also recoverable. See Charter International Oil Co. v. United States, 925 F.Supp. 104 (D.R.I. 1996). In addition, the part of the liability section that states that actions may be brought by the attorney general or DEM director refers only to suits for recovery for environmental damage, such as injury to the state's wildlife and natural resources. R.I.Gen.Laws § 23-19.1-22(c) see also Charter International Oil Co. v. United States, 925 F.Supp. 104 (D.R.I. 1996). Thus, damages related to personal injury or property damages may be brought by individuals pursuant to the statute.

Finally, the liability section provides for treble damages when a defendant improperly disposed of hazardous waste willfully or knowingly. R.I.Gen.Laws § 23-19.1-22(d). The HWMA also contains criminal and civil penalty provisions. R.I.Gen.Laws § 23-19.1-17, § 23-19.1-18. Therefore, unless there is a private cause of action, the treble damages penalty is duplicative of the state's power to levy civil and criminal penalties under R.I.Gen.Laws § 23-19.1-17 and § 23-29.1-18, thereby rendering it effectively meaningless. John Langlois, "J'Adoube: Private Rights of Action Under the Rhode Island Hazardous Waste Management Act," 39 R.I.Bar.J. 9 (June 1991). Therefore, a private cause of action exists under the HWMA and this count should stand.

Case 1:05-cv-00221-T Document 34 Filed 10/03/2005 Page 21 of 24

## VIII. THE PLAINTIFFS HAVE PROPERLY PLEAD A CLAIM FOR PUNITIVE DAMAGES

Throughout each count of the Amended Complaint the Plaintiffs allege sufficient conduct on the part of the Defendant to warrant an award of punitive damages. Moreover, the question is whether the Defendant's conduct was intentional not whether they intended to harm the Plaintiff, as the Defendant alleges. These allegations support the Plaintiffs' claim for punitive damages.

### a. Under Rhode Island Law, a Specific Intent to Harm is not Required if the Alleged Conduct is sufficiently Malicious, Wanton, or Willful to Warrant an Award of Punitive Damages

Under Rhode Island law, punitive damages may be awarded in any other case when there is a showing that "the defendant acted with malice or in bad faith." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993). In determining whether or not to allow a claim for punitive damages, the Court must look to the conduct alleged and not the particular theory of liability. See Wilson Auto Enter., Inc. v. Mobil Oil Corp., 778 F.Supp 101, 10 (D.R.I. 1991) (public nuisance case where District Court tacitly approved of punitive damages claims in public nuisance cases, but found that willful and wanton conduct had not been alleged in the complaint and therefore claim of punitive damages could not go forward). [14]

"[P]unitive damages in tort cases may be awarded not only for actual intent to injure or evil motive, but also for recklessness, serious indifference to or disregard for the rights of others, or even gross negligence." Smith v. Wade, 461 U.S. 30, 48 (1983)(examining the substantive law of a multitude of jurisdictions including an analysis of Rhode Island Law). The Court noted that

---

[14] The test in Rhode Island for determining whether punitive damages may be awarded as a matter of law is whether there is "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished." Palmisano, 624 A.2d 318 (quoting Sherman v. McDermott, 329 A.2d 195, 196 (R.I. 1974)); Regan v. Cherry Corp., 706 F.Supp 145, 153 (D.R.I. 1989).

the inclusion of the term "malice" created some confusion as to the intent component for punitive damages. Id. at 40. After a lengthy discussion of the definition of the term, the Court concluded that "most of the confusion, however, seems to have been over the degree of negligence, carelessness, or culpable indifference that should be required—not over whether actual intent was essential." Id. at 40. Thus, the Plaintiffs need only allege that the actions of the Defendants were malicious, wanton or willful.

The terms malicious and wanton are both closely linked to a recklessness standard. In the punitive damages context, malice has been held to mean "grossly and recklessly negligent, so wantonly indifferent to another's rights, that he should be required to pay damages in excess of mere compensation as a punishment and example." Id. at 41, fn 8. Likewise, the Court held that "[w]anton means reckless—without regard to the rights of others." Id. "Finally, "willfulness" did not mean intent to cause injury, but only voluntary action." Id. Thus, it is sufficient for the Plaintiffs in this case to show that the Defendant had knowledge of a risk, disregarded that risk in going forth with the alleged conduct, and injury resulted. Id. The Plaintiffs have sufficiently alleged these elements, therefore, the Plaintiffs' claim for punitive damages should stand.

## CONCLUSION

For all of the foregoing reasons, each of the counts in the Plaintiffs Amended Complaint are well pled, supported by Rhode Island law and the facts alleged and therefore, the Defendant's Motion to Dismiss Should be denied and the Plaintiffs should be permitted to proceed on all counts.

**DATED: September 30, 2005**

**Respectfully Submitted,**

**Robert J. McConnell (#3888)**
**Jonathan D. Orent**
**Motley Rice LLC**
**321 South Main Street**
**Providence, RI 02940**

**David C. Strouss**
**Brad J. Mitchell**
**Thornton & Naumes, LLP**
**100 Summer Street, 30th Floor**
**Boston, MA 02110**

**Mark W. Roberts**
**McRoberts, Roberts & Rainer**
**51 State Street**
**Boston, MA 02109**

Case 1:05-cv-00221-T cument 34 Filed 10/03/2005 Pa 24 of 24

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2005, a copy of the foregoing was mailed to:

**ADLER POLLOCK & SHEEHAN P.C.**

**John A. Tarantino, Esq.**
**Patricia K. Rocha, Esq.**
**David A. Wollin, Esq.**
**Kristen W. Sherman, Esq.**
**One Citizens Plaza, 8th Floor**
**Providence, RI 02903-1345**
**(401) 274-7200**
**Fax: (401) 351-4607**

**WATSON, BISHOP, LONDON & BROPHY**

**Christina Dodds**
**The Littlefield Building**
**106 E. 6thh Street, Suite 700**
**Austin, TX 78701**

**KASOWITZ, BENSON, TORRES & FREIDMAN, LLP**

**Eric D. Herschmann**
**1633 Broadway**
**New York, NY 10019**

# EXHIBIT TWO