A-3

# Issued by the
# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, ET AL.,<br>KEVIN BURNS, ET AL.<br>COLLEEN BIGELOW, ET AL.., AND<br>SHEILA REISS, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br><br>Defendant. | **SUBPOENA IN A CIVIL CASE**<br><br>Civil Action Nos. 05-221T,<br>05-274T, 05-370T, 05-522T<br><br>**CASE PENDING IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND** |

To: Custodian of Records
Inland Fuel Terminal Company
c/o Russell Lacey
25 State Street
Tiverton, RI 02878

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| Place | Courtroom |
|---|---|
| | Date and Time: |

☒ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| Place | Date and Time |
|---|---|
| Adler Pollock & Sheehan P.C.<br>One Citizens Plaza, 8th Floor<br>Providence, RI 02903-1345 | February 28, 2007<br>1:00 p.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

**SEE EXHIBIT A**

| Place | Date and Time |
|---|---|
| Adler Pollock & Sheehan P.C.<br>One Citizens Plaza, 8th Floor<br>Providence, RI 02903-1345<br><br>ATT: David A. Wollin, Esq. | January 31, 2007<br>10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| Premises | Date and Time |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set fort, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | Date |
|---|---|
| [signature] | December 22, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David A. Wollin, Esq. (#4950)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Attorney for Defendant New England Gas Company, Inc.

[signature]

**PROOF OF SERVICE**

| SERVED :Date | :Place |
|---|---|
| 28 December, 2006 | Tiverton, R.I. |
| Served on (Print Name) | :Manner of Service |
| Inland Fuel Terminal Co. | Served on agent for service Russell Lacey |
| Served on (Print Name) | :Title |
| George R Clark | Constable #6025 |

DECLARATION OF SERVER

I declare under penalty of perjury under the law of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 28 December, 2006
Date

George R. Clark Constable #6025
Signature of Server

84 Weaver Rd.
Address of Server

Johnston, R.I. 02919

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE A

## Definitions

1. “You" and "your" means Inland Fuel Terminal Company and each of its current and former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of its current and former partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, attorneys, advisors, accountants and all persons and entities acting or purporting to act on their behalf.

2. “Inland Fuel Terminal Co.” means the Inland Fuel Terminal Company and each of its current and former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and includes, without limitation, each of its current and former partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, attorneys, advisors, accountants and all persons and entities acting or purporting to act on their behalf.

3. "Inland Fuel Terminal" or "Tank Farm" means the property abutting Mount Hope Bay that is located west of Bay Street and north of Judson Street in Tiverton, Rhode Island.

4. “Tiverton," means the Town of Tiverton, Rhode Island, its representatives, associates, consultants, attorneys, advisors, accountants and all person and entities acting or purporting to act on its behalf.

5. The "Bay Street Area" means the Bay Street Neighborhood Study Area located in Tiverton, Rhode Island, including all land within one-quarter of a mile of the Bay Street Neighborhood Study Area.

6. The "1933 Fire" means the fire that occurred in 1933 at the Tank Farm.

7. "Hurricane Carol of 1954" means the hurricane that devastated parts of Rhode Island in August/September of 1954.

8. "Communications" shall be interpreted in its broadest sense and means any transmission or exchange of thoughts, ideas, data, messages, inquires or information of any kind, whether or not intended for exchange with any person, whether such transmissions or exchanges are generated, transcribed or recorded orally, in writing, in meetings, personally, electronically or otherwise.

9. "Concerning," "relating to," and/or "regarding" mean referring to, bearing upon, summarizing, reflecting, constituting, containing, embodying, mentioning, showing, comprising, evidencing, supporting, discussing, describing, commenting upon, alluding to, pertaining to, probative of, in connection with, dealing with, in respect of, about, involving, indicating, identifying, memorializing, proving, having anything to do with, or contradicting, in any way, in whole or in part, the subject matter referred to in the request.

10. "Document" means any kind of written or graphic matter, however produced and reproduced, including matter written or produced by hand, typed, recorded, taped, photocopies, filed, telecopied, filmed, microfilmed, transcribed or otherwise created, generated or prepared, and including all originals, masters, drafts and non-identical copies bearing notations or marks not found on the originals, whether sent or received, and including without limitation any and all correspondence, memoranda, drafts, notes, diaries, cards, letters, statistics, summaries, analyses, submissions, applications, forms, reports, sketches, drawings, designs, specifications, telegraphs, minutes, agendas, schedules, contracts, agreements, addendums, studies, files, affidavits, financial records, account statements, checks, check stubs, general ledgers, calculations, journals,

ledgers, brochures, manuals, pamphlets, books, magazines, articles, instructions, directions, directives, rules, regulations, policy books, guidelines, work plans, questionnaires, surveys, licenses, vouchers, blueprints, notebooks, catalogues, bids, prospectuses, transcripts, stenographic and handwritten notes, regulatory reports or filings, publications, circulars, pictures, films, computer printouts, computer disks, computer tapes, computer data, computer memory, e-mails, affidavits, declarations, expense records, logs, voice recordings, charts, compilations, press releases, resumes, inter-office and intra-office communications, offers, bulletins, worksheets, papers, photographs, graphs, microfiche, microfilm, videotape, motion pictures, audio tape, cassettes, discs, and other data compilations of any kind or in any other form capable of being read, heard or otherwise understood.

11. The words "and" and "or" shall be construed either conjunctively or disjunctively so as to bring within the scope of this subpoena any information or documents that might otherwise be considered beyond its scope.

12. The singular form of a word shall be construed to include the plural, and the plural form of a word shall include the singular, so as to bring within the scope of this subpoena any information or documents that might otherwise be considered to be beyond its scope.

13. The word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each," so as to bring within the scope of this subpoena any information or documents that might otherwise be considered to be beyond its scope.

14. All phrases following the terms "including," "including, but not limited to" and "including without limitation" are intended to illustrate the kinds of matters that are responsive to

this subpoena. Such examples are not intended to be exhaustive of the materials sought and shall not in any way be read to limit the scope of the request.

15. "Identify" when used with reference to a natural person means to (a) state the individual's full name; (b) state the name and address of present employment; (c) state the present position of employment and department if still employed; and (d) state the present residence of the person.

16. "Identify" when used to refer to an entity other than a natural person, means to state its full name, the present or last known address of its principal office or place of doing business, and the type of entity (e.g., corporation, partnership, unincorporated association).

17. "Identify" when used with reference to a document means to state (a) the subject of the document; (b) the title of the document; (c) the type of document (e.g., letter, e-mail, memorandum, chart); (d) the date of the document, or if the specific date thereof is unknown, the month and year or other best approximation of such date; (e) the identity of the person or persons who wrote, contributed to, prepared or originated such document; and, (f) the present or last known address of the custodian of the document.

18. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of this subpoena all documents and responses which might otherwise be considered to be beyond its scope.

**Instructions**

1. Furnish all documents within your possession, custody or control, or within the possession, custody or control of your attorneys, investigators, agents, employees, and all other persons acting or purporting to act on your behalf.

2. Respond to each request for production of documents in full without abbreviation, expurgation or redaction. As to any request that cannot be responded to completely after reasonable efforts are made to secure the requested documents, so state, give the reason why a complete response cannot be made at this time, and provide as many documents responsive to the request as is possible.

3. This subpoena and accompanying document request is continuing in nature and, to the extent that your responses may be enlarged or otherwise modified by information acquired subsequent to the production of your initial responses hereto, you are required to promptly produce supplemental responses reflecting such changes.

4. Any document requested herein shall be produced as it is kept in the normal course. The name of the file from which it was produced, the identity of the person from whose file it was produced and the identity of the present custodian of that file shall each be set forth.

5. Any document that is attached by staple, clip or otherwise to a document requested herein shall also be produced (attached in the same manner as the original), regardless of whether the production of that document is otherwise requested herein.

6. In the event that any document or portion of any document within the scope of this subpoena is withheld from production upon a claim of privilege, work product or for any other reason, you are requested to furnish, with respect to each such document, the following: (i) a statement regarding the basis for any claim of privilege, work product or other forms of non-disclosure; and (ii) a sufficient description of the document, including (a) the title of the document and the nature and subject matter of its contents; (b) the date the document was prepared or any date appearing on the document; (c) the number of the document's pages, attachments and appendices; (d) the names of the persons who authored or prepared the

document, and an identification by employment and title of each such person; and (e) the names of each person to whom the document, or a copy thereof, was sent, shown or made accessible, or to whom it was explained, together with an identification of each such person.

7. In the event that any document requested herein was formerly in your possession, custody or control and has been lost, destroyed or otherwise disposed of, you are requested to furnish a list identifying each such document and stating the following information with respect to each document: (i) the title of the document and the nature and subject matter of its contents; (ii) the identity(ies) of the person(s) who prepared or authored the document, and, if applicable, the person(s) to whom the document was sent or was intended to be sent; (iii) the date on which the document was prepared or transmitted; and (iv) the date on which the document was lost, destroyed or otherwise disposed of, the manner and conditions of and reasons for such destruction or other disposition, and the person(s) requesting and performing the destruction or other disposition.

8. Each and every non-identical duplicate of a document within the scope of any request, whether different from the original because of stamps, indications of recipient, handwritten notes, marks, comments or attachment to different documents, or for any other reason, is a separate document to be produced in response hereto.

9. The period covered by these requests is from January 1925 to the present, except as otherwise specifically provided.

**Document Requests**

1. All documents concerning the handling, storage and/or disposal of waste and/or by-products associated with the operation of the Tank Farm.

2. All documents, including any permits or licenses, concerning construction and/or excavation at the Tank Farm, including but not limited to, the excavation and/or construction of any tank(s) at the Tank Farm and/or the expansion of the Tank Farm.

3. All documents, including any permits or licenses, concerning the demolition of any tank(s) or other structures at the Tank Farm.

4. All documents concerning the handling, disposal and/or distribution of soil or dirt from the Tank Farm at the time of any construction, excavation or demolition at the Tank Farm.

5. All documents that identify any substances stored at any time inside the tanks at the Tank Farm.

6. All documents, including any contracts, bills of sale, service agreements, records of payment, etc., between Inland Fuel Terminal Co., or any of its predecessors and any entity that performed hauling, excavating and/or disposal services concerning the Tank Farm.

7. All documents concerning any fires and/or explosions at the Tank Farm, including without limitation, the 1933 Fire and all documents concerning any property damage caused by the 1933 Fire.

8. All documents concerning the hurricane that struck Tiverton on or about September 21, 1938, including all documents concerning any damage to the Tank Farm caused by that hurricane.

9. All documents concerning Hurricane Carol of 1954, including all documents concerning any damage to the Tank Farm caused by that hurricane.

10. All documents, including, without limitation, any and all exposure studies, surveys, area and field studies, exposure monitoring reports, test results and/or sampling data

concerning any environmental testing, environmental site assessment(s) or environmental due diligence investigations concerning the soil, water, air and/or structures at the Tank Farm and/or the surrounding properties, including the Bay Street Area.

11. All documents concerning any environmental testing or environmental site assessment(s) conducted by or relating to any response provided by Inland Fuel Terminal Co., or its predecessors or successors, to any inquiry made by the Environmental Protection Agency ("EPA"), the Rhode Island Department of Environmental Management ("RIDEM"), the Massachusetts Department of Environmental Protection ("MADEP") or any other local, state or federal agency, including, but not limited to, any response provided to the EPA pursuant to 42 U.S.C. Section 9604(e), or to any local or state regulatory agency pursuant to a state statutory or common law counterpart to 42 U.S.C. Section 9604(e).

12. All documents concerning any oil spills on the Tank Farm or on the property adjoining the Tank Farm or in the Bay Street Area.

13. All documents concerning any spill procedures in effect at the Tank Farm at any time during the relevant period.

14. All documents concerning the release, spill or leakage of any substance on the Tank Farm or on the property adjoining the Tank Farm or in the Bay Street Area, including, without limitation, any documents submitted to or prepared by EPA, RIDEM, MADEP or any other local, state or federal agency relating to the Tank Farm.

15. All documents concerning the contamination of any soil, waterway (including Mount Hope Bay), roadway, airway and/or property on or adjoining the Tank Farm or in the Bay

Street Area, submitted to or prepared by EPA, RIDEM, MADEP or any other local, state or federal agency relating to the Tank Farm.

16. All documents identifying the owner(s) of the property on which the Tank Farm is located (and any prior location of the Tank Farm) as well as documents identifying the owner(s) of any structures on the Tank Farm.

17. All documents concerning the ownership of the property on which the Tank Farm is located (and any prior location of the Tank Farm) as well as documents concerning the ownership of any fixtures on that property.

*403193_1.doc*