UNITED STATES DISTRICT COURT
DISTRICT OF RHODE SLAND

RECEIVED
NOV 22 2005
U.S. District Court
Rhode Island

GAIL, JOHN D. AND JOHN F. CORVELLO; )
LINDA M.AND ROBERT M. FERREIRA; )
GARY P. ROSE; VICTOR ROSE III; LORRAINE )
AND FRANK J. AGUIAR, JR.; CATHLEEN )
AND MICHAEL A.ALVARNAS; MARY LOU )
AND CARLOS AMARAL; FATIMA AMARAL; )
LIRIA AMARAL; BAY VIEW HOLY GHOST )
CITIZENS CLUB; DEBRA BEAUSOLEIL; )
ELLEN G. AND JOHN CABRAL; SUSAN )
CORREIA; MARIA I. AND PEDRO M. )
AMARAL; HENRY M. BEIROLA, JR.; )
STEPHEN BIGOS; NANCY ANN AND )
ROBERT BORDEN; JANE AND RICHARD A. )
BORGES; MARK BOUCHARD; SARA CABRAL;)
WILLIAM G. CAMARA; JUNYA )
AND JOHN CAMBRA; JANICE M.AND )
BARRY C. CARROLL; KAREN A. AND )
CLAYWELL M. CHAFTON,III; KATHLEEN )
AND JOHN CHRISTO; CAROLYN COLLINS; )
NORMENIA AND JOSE P. CORDEIRO; )
SHIRLEY M. CORDEIRO; PATRICIA AGUIAR; )
ISABEL M. AND FRANCIS R.CORREIA; )
COLLEEN FERNANDES AND MANUEL )
CHRISTO; DORIS AND DENNIS DUARTE; )
JOHN F. DUARTE; ESTATE OF CHRISTINA )
FARIAS; LINDAAND BARRY HAIR; MARY )
AND LARRY A. HELD;PAMELA A. AND )
EDWARD J. KLUS; RAYMOND AND )
JUDITH LEPAGE; VICTORIA AND )
MICHAEL MACOMBER; HILDA R., )
MYRON J.AND RICHARD M. MARTIN; JEAN )
AND THOMAS J.MEDEIROS; LINDA )
MELLO-FOURNIER; ELEANOR AND )
MICHAEL MONAST; EVELYN MORRIS; )
ANTONE CUSTODIO;LUCIA AND DIMAS )
PAVAO; MANUEL AND ODELIA PAVAO; )
CYNTHIA A. REAGAN, DEBRA A. )
DEPAOLA, AND THE ESTATE OF GEORGE )
OLIVEIRA; LOIS AND STEPHEN J. SCANLON; )
MICHELLE AND DAVID SILVA; ANGELINA )
SILVIA; LOREE A. AND DANA SILVIA; )
DANA AND JOHN SILVIA; BARBARA A. )

AND TOBIAS SILVIA, JR.; GEORGIANNA )
AND ALVIN B. SIMPSON; ALVIN B SIMPSON )
REVOCABLE TRUST; GEORGIANNA )
SIMPSON REVOCABLE TRUST; MARSHA )
AND CLINTON SKARKA; MARY SOUZA, )
MARY P. FARIA, VIRGINIA BORGES, )
HILDA MARTIN AND DELORES BOYLE; )
DANIEL J.TERCEIRO; THERESA FARIAS; )
MARGARET MEDEIROS; PAUL F. TERCEIRO; )
BRUCE THOMPSON; CAROLYN AND )
DENNIS VALOIS; HEATHER AND ANTONIO )
VIEIRA; BETSEY D. WARREN; LYNNE V., )
ANDTIMOTHY WATERS; LISA AND )
ROBERT WILT, JR.; STEPHEN AND )
ROCHELLE FERRY; JOSE A. AND GINA )
ADORNO; EVELYN ROGERS; ADAM BRAGA; )
JENNIFER BRAGA; DONNA BRAGA; DAVID )
A. TAVARES; PAULINE CARVALHO; ERNEST )
AND NORMA SIMPSON; MARION )
BRADSHAW TRUST; LISA M. MENDOZA: )
)
*Plaintiffs,* )
vs. ) C.A. No. 05-221T
) (Related Case No. 05-274T)
)
)
NEW ENGLAND GAS COMPANY, INC.; )
*Defendant.* )

## THIRD AMENDED COMPLAINT

For their complaint, the Plaintiffs by and through their attorneys, MOTLEY RICE, THORNTON & NAUMES, AND MCROBERTS, ROBERTS & RAINER, allege as follows:

## I. INTRODUCTORY STATEMENT

1. The Plaintiffs own property and/or reside in Tiverton, Rhode Island and file this complaint to recover damages for the diminution in the value of their properties, lost use and enjoyment of their properties, and severe emotional distress caused by the

Defendant's disposal of and/or release of coal gasification waste material containing arsenic, lead, cyanide and other hazardous substances.

## II. PARTIES

**Plaintiffs**

2. The Plaintiffs all own and/ or reside at property in Tiverton, Rhode Island:

a. Plaintiffs Gail, John F. and John D. Corvello own and reside at the property located at 188-190 Bay Street;

b. Plaintiffs Linda M. and Robert M. Ferreira own and reside at the property located at 37 A. Connell Street;

c. Plaintiffs Gary P. Rose and Victor Rose III own and reside at the property located at 34 Chace Avenue;

d. Plaintiffs Lorraine A. and Frank J. Aguiar, Jr. own and reside at the property located at 62 Canonicus Street;

e. Plaintiffs Cathleen and Michael A. Alvarnas own and reside at the property located at 39 Chace Avenue and own the property located at 31 Chace Avenue;

f. Plaintiffs Mary Lou and Carlos Amaral own and reside at the property located at 17 Foote Street;

g. Plaintiffs Fatima Amaral, Liria Amaral, Debra Beausoleil, and Susan Correia own and reside at the property located at 38 Hilton Street;

h. Plaintiffs Maria I. and Pedro M. Amaral own and reside at the property located at 49 Hilton Street;

Case 1:05-cv-00221-T-DLM Document 40-2 Filed 11/22/2005 Page 4 of 23

i. Plaintiff Henry M. Beirola, Jr. owns the property located at 79 Canonicus Street;

j. Plaintiff Stephen Bigos owns and resides at the property located at 36 Canonicus Street;

k. Plaintiffs Nancy Ann and Robert Borden own the properties located at 58 Bay Street and 15 Chace Avenue;

l. Plaintiffs Jane and Richard Borges own and reside at the property located at 60 Chace Avenue;

m. Plaintiff Mark Bouchard owns the property located at Block 160, Lot 72;

n. Plaintiff Sara Cabral owns and resides at the property located at 58 Canonicus Street;

o. Plaintiff William G. Camara owns the properties located at Block 3, Lot 1C and Block 3, Lot 1D;

p. Plaintiffs Junya and John Cambra own and reside at the property located at 91 State Street and own the properties located at Block 17, Lot 1; Block 17, Lot 3; Block 17, Lot 4A; Block 17, Lot 5A and Block 17, Lot 6;

q. Plaintiffs Janice M. and Barry C. Carroll own and reside at the property located at 145 Judson Street;

r. Plaintiffs Karen A. and Claywell M. Chafton, III own and reside at the property located at 16 Chace Avenue;

s. Plaintiffs Kathleen and John Christo own and reside at the property located at 48 Canonicus Street;

t. Plaintiff Carolyn Collins owns and resides at the property located at 61 Hilton Street;

u. Plaintiffs Normenia and Jose P. Cordeiro own and reside at the property located at 51 Canonicus Street;

v. Plaintiffs Shirley M. Cordeiro and Patricia Aguiar own and reside at the property located at 130 Bay Street and own the property located at 110 Bay Street;

w. Plaintiffs Isabel M. and Francis R. Correia own and reside at the property located at 8 Bay Street;

x. Plaintiffs Colleen Fernandes and Manuel Christo own and reside at the property located at 39 Hilton Street;

y. Plaintiff the Estate of Christina Farias owns the property located at 61 Canonicus Street;

z. Plaintiffs Linda and Barry Hair own and reside at the property located at 52 Hilton Street;

aa. Plaintiffs Mary and Larry A. Held own and reside at the property located at 28 Hilton Street;

bb. Plaintiffs Pamela A. and Edward J. Klus own and reside at the property located at 36 Hooper Street;

cc. Plaintiffs Victoria and Michael Macomber own and reside at the property located at 103 Canonicus Street;

dd. Plaintiffs Hilda R., Myron J. and Richard M. Martin own and reside at the property located at 44 Hilton Street;

ee. Plaintiff Jean and Thomas J. Medeiros own and reside at the property located at 111 State Avenue;

ff. Plaintiff Linda Mello-Fournier owns and resides at the property located at 114 Canonicus Street;

gg. Plaintiffs Eleanor and Michael Monast own and reside at the property located at 40 Judson Street;

hh. Plaintiffs Evelyn Morris and Antone Custodio own and reside at the property located at 126 Hilton Street;

ii. Plaintiffs Lucia and Dimas A. Pavao own and reside at the property located at 88 Bay Street;

jj. Plaintiffs Lois and Stephen J. Scanlon own and reside at the property located at 129 Bottom Street;

kk. Plaintiffs Michelle and David Silva own and reside at the property located at 29 Canonicus Street;

ll. Plaintiff Angelina Silvia owns and resides at the property located at 42 Chace Avenue;

mm. Plaintiffs Loree A. and Dana Silvia own and reside at the property located at 30 Judson Street;

nn. Plaintiffs Dana and John Silvia own the property located at 96 Bay Street;

oo. Plaintiffs Barbara A. and Tobias Silvia, Jr. own and reside at the property located at 50 Hooper Street;

pp. Plaintiffs Georgianna and Alvin B. Simpson own the property located at 123 Judson Street;

qq. Plaintiffs Alvin B. Simpson Revocable Trust and Georgianna Simpson Revocable Trust own the properties located at Lot 41, Block 34 and Lot 41, Block 35;

rr. Plaintiffs Marsha and Clinton Skarka own and reside at the property located at 114 Lepes Road;

ss. Plaintiffs Daniel J. Terceiro, Theresa Farias and Margaret Medeiros own the properties located at Block 22, Lot 3; Block 22, Lot 4 and Block 22, Lot 6;

tt. Plaintiff Paul E. Terceiro owns and resides at the property located at 33 Bay Street;

uu. Plaintiff Bruce Thompson owns and resides at the property located at 126 Chace Avenue;

vv. Plaintiffs Carolyn and Dennis Valois own and reside at the property located at 42 Bay Street and own the property located at Block 16, Lot 6A;

ww. Plaintiffs Heather and Antonio Vieira own and reside at the property located at 55 Canonicus Street;

xx. Plaintiff Betsey D. Warren owns and resides at the property located at 17 Canonicus Street and owns the property located at 12 Canonicus Street;

yy. Plaintiffs Lynne V. and Timothy Waters own and reside at the property located at 54 Judson Street;

zz. Plaintiffs Lisa and Robert Lee Wilt, Jr. own and reside at the property located at 218 Lepes Road.

aaa. Plaintiffs Ellen G. and John Cabral own and reside at the property located at 85 Canonicus Street.

bbb. Plaintiffs Bay View Holy Ghost Citizens Club own and reside at the property located at 66 Bottom Street.

ccc. Plaintiffs Doris and Dennis Duarte own and reside at the property located at 58 Hilton Street.

ddd. Plaintiff John F. Duarte as Trustee own and reside at the property located at 9 Hilton Street.

eee. Plaintiffs Raymond and Judith Lepage own and reside at the property located at 23 Methuen Street.

fff. Plaintiffs Manuel and Odelia Pavao own and reside at the property located at 80 Bay Street.

ggg. Plaintiffs Cynthia A. Reagan, Debra A. Depaola, and the Estate of George Oliveira own and reside at the property located at 35 Hilton Street.

hhh. Plaintiffs Mary Souza, Mary P. Faria, Virginia Borges, Hilda Martin and Delores Boyle own the property located at 43 Hilton Street.

iii. Plaintiffs Jose A. and Gina Adorno own the property located at 15 Bay Street.

jjj. Plaintiffs Stephen and Rochelle Ferry own the property located at 47 A Connell Street.

kkk. Plaintiffs Donna Braga, Jennifer Braga and Adam Braga own the property at 40 Bottom Street.

lll. Plaintiffs Donna Braga, Jennifer Braga and Adam Braga own the property at 8 Bottom Street.

mmm. Pauline Carvalho owns the property at 11A Connell Street.

nnn. Plaintiffs Georgianna Simpson Revocable Trust, Alvin B. Simpson Revocable Trust, Norma and Ernest Simpson AND the Marion Bradshaw Trust own the property at Parcel 181-18-2 (Borden Tuell Farm).

ooo. Plaintiffs Georgianna Simpson Revocable Trust, Alvin B. Simpson Revocable Trust, Norma and Ernest Simpson AND the Marion Bradshaw Trust own the properties located at Parcel 24-25-1/24-26-1 Waterfront.

ppp. Plaintiffs Evelyn Rogers and David A. Tavares rent the property at 51 Hooper Street, but would have built a house on family-owned land on Bottom Street but for the contamination moratorium which has prevented construction.

qqq. Plaintiff Lisa M. Mendoza owns the property at 28 Hooper St.

**<u>Defendant</u>**

3. The Defendant, New England Gas Company, formerly known as Fall River Gas Company, has its headquarters in Providence, Rhode Island.

## III. FACTS

**<u>Plaintiffs' Properties Filled With Contaminated Coal Gasification Waste Material From Fall River Gas Company</u>**

4. In or about August 2002, during construction and installation of the Mount Hope Bay Sewer Interceptor Project in Tiverton, Rhode Island, the sewer contractor, Starwood

Tiverton LLC, as operator of the project, contracted with D'Ambra Construction to conduct excavation activities in the vicinity of Bay Street at the intersections with Judson Street and Last Street.

5. The excavation activities conducted by D'Ambra Construction included the stockpiling of soils on the corner of Judson and Bay Street and at the bottom of Last Street in Tiverton.

6. Complaints received by the State of Rhode Island Department of Environmental Management [hereinafter "RIDEM"] concerning the stockpiled soils initiated an investigation by a member of the RIDEM hazardous materials response team.

7. The RIDEM field investigator observed that the stockpiled soils placed by the sewer contractor at the corner of Judson and Bay Street and at the bottom of Last Street had a blue color associated with it, indicative of historic coal gasification waste material.

8. RIDEM had the stockpiled soils analyzed by RIDEM's contractor laboratory.

9. The laboratory analysis of the stockpiled soils revealed the presence of cyanide and other hazardous substances in the stockpiled soils.

10. On October 8, 2002, RIDEM issued a Letter of Responsibility to the Town of Tiverton as the owner of the property and to Starwood Tiverton, LLC as the operator of the sewer installation project.

11. In or about November 2002, EA Engineering, on behalf of the Town of Tiverton and Starwood Tiverton, LLC conducted a subsurface investigation beneath portions of the following public roads and public streets in Tiverton as far north as State Avenue: Bay, Judson, Hooper, Hilton, Canonicus, Chase, and Foote.

12. The EA Engineering subsurface investigation revealed the presence of toxic and hazardous substances, including total petroleum hydrocarbons (TPH), semi-volatile organic compounds (SVOCs), lead, arsenic and cyanide in the soils.

13. Additional analytic testing of the contaminated soils determined that some contained toxic and hazardous substances, including poly aromatic hydrocarbons (PAHs), cyanide and naphthalene at levels exceeding the Residential and Industrial/Commercial Direct Exposure Criteria.

14. The results reported by EA Engineering indicated to RIDEM that there was a more wide spread problem with the contaminated soil than had been assumed as the fill containing contaminated soil extended beyond the sewer pipeline right of way and beneath areas of the public roads and public streets in the adjacent community.

15. On or about March 13, 2003, RIDEM met with representatives from the Town of Tiverton who provided historical information to RIDEM concerning the area of Tiverton that was the subject of the RIDEM activities.

16. Historical information provided to RIDEM by the Town of Tiverton included documentation citing a former employee of Fall River Gas Company concerning disposal of "blue soil."

17. Based on the foregoing, RIDEM concluded that some of the properties in this residential area of Tiverton were filled with contaminated coal gasification waste from Fall River Gas Company prior to the construction of the homes and that undeveloped property to the south of the residential development may also have been filled with contaminated coal gasification waste material from Fall River Gas Company.

18. On March 17, 2003, RIDEM issued a Letter of Responsibility to New England Gas Company/Southern Union Company stating in part:

> RE: Historical Manufactured Gas Plant Contaminated Soils in Tiverton, Rhode Island (former Fall River Gas Co.) along Bay Street, Judson Street, Canonicus Street, Hooper Street, Hilton Street, Chase Street and Foote Street, and adjoining properties (i.e. "the site").
>
> The contaminated soil appears to contain historical manufactured coal gasification materials.
>
> Based upon the information identified to date, Southern Union Company, as the owner of the former Fall River Gas Company (d.b.a. New England Gas Co.), is identified as a Responsible Party as defined by Rule 3.44 for the improper disposal of contaminated soils.

19. Soil with a blue color indicates the presence of coal gasification waste material.

20. Fall River Gas Company was involved with coal gasification.

21. Coal gasification waste material contains lead, arsenic, cyanide and other hazardous substances.

22. Subsequent testing, field work, observations, information and analysis confirmed that properties in the site, a residential area of Tiverton where Plaintiffs own property and reside, were filled with coal gasification waste containing lead, arsenic, cyanide, and other hazardous substances that contaminated the soil.

**Emergency Moratorium Area**

23. On August 25, 2003, the Town Council of the Town of Tiverton placed an "Emergency Moratorium" on all property within the following borders: bordered on the west by the waterfront; bordered on the north by the Rhode Island/Massachusetts state line; bordered on the east by Church Street from end to end and then continued as a drawn line to a point northerly that meets the state line and continued southerly as a

drawn line to a point that meets Lepes Road; and bordered on the south by the center of Lepes Road [hereinafter "Emergency Moratorium Area"]

24. A letter dated August 27, 2003 from the Town of Tiverton to All Property Owners in the Northwest Quadrant of Tiverton states in part:

> The 'Emergency Moratorium' prohibits immediately any excavation within the bordered area. Additionally, any building permit that requires excavation will not be issued within the area.
>
> (RIDEM) and the Department of Health are currently working with the residents and town regarding contaminated soil within the bordered area.
>
> Remember, the 'Emergency Moratorium' includes all type of Excavation on your property.

25. Plaintiffs all own property located in the Emergency Moratorium Area.

26. Testing on properties in the Emergency Moratorium Area, including properties owned by Plaintiffs, properties abutting properties owned by Plaintiffs, and properties in the vicinity of properties owned by Plaintiffs, has revealed the presence of hazardous substances such as lead, arsenic and cyanide.

27. For the forgoing reasons, Plaintiffs have suffered irreparable harm as a result of the presence of coal gasification waste on their properties.

28. The finding of responsibility by the RIDEM against New England Gas Company/ Southern Union demonstrates that the Plaintiffs have a high likelihood of success on the merits of their claims.

## IV. CAUSES OF ACTION

**COUNT ONE**
**(Negligence)**

29. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

30. The Defendant had a duty to exercise reasonable care in handling, disposing of, and/or releasing hazardous substances in its possession, custody and control, including coal gasification waste material containing lead, arsenic, and cyanide.

31. The Defendant had a statutory duty, pursuant to R.I.GEN. LAWS § 23-19.1-22 (1956), to transport, store, and dispose of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location authorized by that chapter or the rules and regulations promulgated pursuant to it.

32. The Defendant had a continuing duty to advise and warn of the dangers associated with the hazardous substances Defendant handled, disposed of, and/or released, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Emergency Moratorium Area.

33. The Defendant knew or should have known that the hazardous substances Defendant handled, disposed of and/or released would cause harm to the Plaintiffs.

34. The Defendant breached its duties by, among other things:

a. disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area;

b. transporting, storing, or disposing of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or

location not authorized by R.I.GEN. LAWS § 23-19.1-22 (1956) or the rules and regulations promulgated pursuant to that chapter;

c. failing to notify or warn property owners in the Emergency Moratorium Area of the hazards Defendant had created;

d. failing to remove the hazards Defendant had created.

35. As a direct and proximate result of the Defendant's conduct, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages as described above.

36. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of its negligence.

**COUNT TWO**
**(Gross Negligence)**

37. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

38. The Defendant had a manifest duty to exercise reasonable care in handling, disposing of, and/or releasing hazardous substances in its possession, custody and control, including coal gasification waste material containing lead, arsenic, and cyanide.

39. The Defendant had a manifest statutory duty pursuant to R.I.GEN. LAWS § 23-19.1-22 (1956) to transport, store, and dispose of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location authorized by that chapter or the rules and regulations promulgated pursuant to it.

40. The Defendant had a continuing manifest duty to advise and warn of the dangers associated with the hazardous substances Defendant handled, disposed of, and/or released, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Emergency Moratorium Area.

41. The Defendant, acting in reckless disregard of the consequences as affecting life or property of the plaintiffs knew or should have known that the hazardous substances Defendant handled, disposed of and/or released would cause harm to the Plaintiffs.

42. The Defendant intentionally breached its manifest duties by, among other things:

a. disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area;

b. transporting, storing, or disposing of hazardous wastes, including coal gasification waste material containing lead, arsenic, and cyanide, in a manner or location not authorized by R.I.GEN. LAWS § 23-19.1-22 (1956) or the rules and regulations promulgated pursuant to that chapter;

c. failing to notify or warn property owners in the Emergency Moratorium Area of the hazards Defendant had created;

d. failing to remove the hazards Defendant had created.

43. As a direct and proximate result of the Defendant's conduct, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages as described above.

**COUNT THREE**
**(Strict Liability)**

44. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

45. The Defendant engaged in ultrahazardous and abnormally dangerous activities when it handled, disposed of and/or released hazardous substances in its possession, custody and control, including coal gasification waste material containing Lead, Arsenic, and Cyanide.

46. The Defendant knew, or should have known, that there was a high degree of risk associated with the handling, disposal and/or release of the hazardous substances, including a risk of harm to the Plaintiffs.

47. As a direct and proximate result of Defendant's ultrahazardous and abnormally dangerous activity, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages, as described above.

48. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of its conduct.

**COUNT FOUR**
**(Private Nuisance)**

49. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

50. The Defendant, by its handling, disposal of, and release of hazardous substances emanating from its own property, including coal gasification waste material containing lead, arsenic, and cyanide used as fill in the Emergency Moratorium Area, has materially interfered with the Plaintiffs' physical comfort and/or use of their property and has thereby created a private nuisance.

51. As a direct and proximate result of the private nuisance created by the Defendant, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages, as described above.

52. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of their conduct.

**COUNT FIVE**
**(Public Nuisance)**

53. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

54. The Defendant, by its handling, disposal of, and release of hazardous substances, coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area, has unreasonably interfered with the health, safety, peace, comfort or convenience of the public and has thereby created a public nuisance.

55. The plaintiffs as owners of property in the Emergency Moratorium Area have suffered harms different than those suffered by the general public.

56. As a direct and proximate result of the public nuisance created by the Defendant, the Plaintiffs have suffered and will continue to suffer substantial injuries and damages, as described above.

57. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of their conduct.

**COUNT SIX**
**(Infliction of Emotional Distress)**

58. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

59. The Defendant's acts and omissions as described above represent conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

60. The Defendant knew or was reckless in not knowing that its acts and omissions would inflict emotional distress on the Plaintiffs.

61. The Defendant's acts and omissions have in fact inflicted severe emotional distress on all or some of the Plaintiffs and the Defendant is liable for the resulting damages Plaintiffs have suffered and will continue to suffer.

**COUNT SEVEN**
**(Unauthorized Disposal of Hazardous Waste)**

62. The Plaintiffs reallege and incorporate herein by reference the foregoing paragraphs of its complaint.

63. The Defendant, acting in a willful and knowing manner, engaged in the transportation, storage, or disposal of hazardous wastes in a manner or location not authorized by R.I. GEN. LAWS § 23-19.1-22 (1956) and has, therefore, caused the unauthorized transportation, storage, or disposal of hazardous wastes through its activities in disposing of and/or releasing hazardous substances, including coal gasification waste material containing lead, arsenic, and cyanide that was used as fill in the Emergency Moratorium Area.

64. The Defendant is liable for treble the amount of the costs, damages, losses, or injuries suffered by the Plaintiffs as a direct and proximate result of their conduct.

**COUNT EIGHT**
**(Recovery of Response Costs Under CERCLA §107 42 U.S.C. § 9607)**

63. Each of the allegations contained in Paragraphs 1 through 62 is incorporated herein by reference.

64. Defendant is the owner of a facility where hazardous substances were generated, and the Defendant arranged for the transportation and/or disposal of hazardous substances in the Moratorium Area.

65. The Defendant disposed of substances defined as hazardous substances under 42 U.S.C. § 9601(14) and 40 CFR Part 302.4 in the Moratorium Area and such substances

have contaminated the soil and ground water in the Moratorium Area at levels exceeding maximum allowable contaminant levels.

66. The plaintiffs are required to incur necessary response costs, consistent with the national contingency plan, including costs entailed in testing their properties for the presence of hazardous substances.

67. The Defendant is liable to the Plaintiffs for the amount of the response costs required to be incurred by the Plaintiffs in testing their properties for the presence of hazardous substances.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiffs by and through their attorneys, MOTLEY RICE, THORNTON & NAUMES, AND MCROBERTS, ROBERTS & RAINER, request that this Honorable Court issue an order and judgment against Defendant as follows:

1. Judgment against the Defendant for compensatory and punitive damages, plus interests, costs, and attorneys' fees;
2. An order awarding Plaintiffs such other extraordinary, declaratory and/or injunctive relief as permitted by law or equity as necessary to assure that the Plaintiffs have an effective remedy; and
3. For such other and further relief as the Court deems equitable just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY.

PLAINTIFFS,
By and through their attorneys,

Robert J. McConnell (#3888)
Michael G. Rousseau (#6940)
Jonathan D. Orent
**MOTLEY RICE LLC**
321 South Main Street
Providence, RI 02940
(401) 521-9400

Case 1:05-cv-00221-T-DLM Document 40-2 Filed 11/22/2005 Page 22 of 23

David C. Strouss
Brad J. Mitchell
**THORNTON & NAUMES LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

Mark W. Roberts
**MCROBERTS, ROBERTS & RAINER**
53 State Street
Boston, MA 02109
(617) 722-8222

## CERTIFICATION

I hereby certify that a copy of the foregoing memorandum was mailed, first-class and postage pre-paid, to all counsel of record per the attached service list on this 22nd day of November, 2005.

[signature]

**SERVICE LIST – C.A. No. 05-0221T (Related Case # 05-274T)**

John A. Tarantino
Patricia K. Rocha
David A. Wollin
Kristen W. Sherman
**ADLER, POLLOCK & SHEEHAN P.C.**
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
401.274.7200

Eric D. Herschmann
**KASOWITZ, BENSON, TORRES & FREIDMAN LLP**
1633 Broadway
New York, NY 10019

Christina Dodds
**WATSON, BISHOP, LONDON & BROPHY**
The Littlefield Building
106 E. 6th Street, Suite 700
Austin, TX 78701
512.479.5900