# UNITED STATES DISTRICT COURT
FOR THE
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **GAIL, JOHN D. and JOHN F. CORVELLO, et al.** *Plaintiffs,* | ) ) | |
| | ) | **C.A. No. 05-0221T** |
| **vs.** | ) ) | |
| **NEW ENGLAND GAS COMPANY, INC.,** *Defendant.* | ) ) | |

**RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT'S RESPONSE TO NEW ENGLAND GAS COMPANY'S MOTION FOR A PARTIAL JUDGMENT ON THE PLEADINGS**

Now comes the Rhode Island Department of Environmental Management ("RIDEM"), by and through its undersigned counsel, and, hereby responds to the Motion for a Partial Judgment on the Pleadings filed by New England Gas Company ("NEGC") dated October 31, 2007 (Document 328).

In support of this response, RIDEM submits the following:

## I. Introduction

The Court invited RIDEM to intervene in this matter for a limited purpose based on NEGC's argument that Plaintiffs' claims should be dismissed on the ground that entertaining a claim for such relief would interfere with RIDEM's efforts to deal with any contaminated properties involved in this matter. RIDEM accepts the Court's invitation to intervene in order to relay to the Court RIDEM's position regarding the nature and scope of its statutory and regulatory authority concerning the remediation of contaminated properties within the State of Rhode Island. The issues raised by NEGC's motion and Plaintiffs' Response in Opposition thereto go far beyond this single case, and are a matter of concern for RIDEM, as the issue of

authority and jurisdiction to order remediation is a serious one, applicable to a number of ongoing and potentially future matters within RIDEM's jurisdiction.

RIDEM is vested with the exclusive authority to investigate and determine appropriate remediation of contaminated property, to supervise, and to control the remediation of properties contaminated with pollutants or at levels that fall within RIDEM's jurisdiction under the Industrial Property Remediation and Reuse Act, R.I.G.L. §§ 23-19.14-1 *et seq.* ("IPRRA"), and the Hazardous Waste Management Act, R.I.G.L. §§ 23.19.1-1 *et seq.* ("HWMA"), and all associated regulations (the "Process"). With respect to the Plaintiffs' properties at issue in this matter (the "Bay Street Neighborhood"), RIDEM has asserted its jurisdiction over the Bay Street Neighborhood since 2002 when it was alerted of its contamination with manufactured gas plant waste from the former Fall River Gas Plant. RIDEM's statutory authority vests it with the power and duty to regulate the entire remediation process, including the determination of the appropriate remediation, timing, nature, scope, extent, and satisfactory completion of the Bay Street Neighborhood remediation. While Plaintiffs may pursue legally valid claims for damages and nuisance, state statutes and regulations dictate that RIDEM is the state agency charged with exclusive authority to select, regulate and authorize the remediation of contaminated properties, and therefore RIDEM occupies the field with regard to determining the specific remediation to occur on any given contaminated property. RIDEM does not, however, challenge the Court's authority to hear and decide a nuisance claim, and to order injunctive relief to abate the nuisance. It follows, however, that any injunctive relief that might be associated with a private action against a responsible party would necessarily require the referral of any and all remediation determinations to RIDEM. This holds especially true in instances such as this one, where RIDEM has already exercised its jurisdiction over the contaminated properties.

With respect to this matter in particular, RIDEM issued an Amended Notice of Violation ("NOV") against Southern Union Company, of which NEGC is an unincorporated division, in September of 2006. Southern Union, in response, requested an administrative hearing before the RIDEM Administrative Adjudication Division ("AAD"). The AAD process is ongoing, and RIDEM and Southern Union are actively litigating Southern Union's responsibility for the remediation of the Bay Street Neighborhood contaminated properties that are at issue in the present matter.

RIDEM believes that where, as here, RIDEM has asserted its statutory authority over contaminated properties within its jurisdiction, and is pursuing remediation of those properties, it has fully occupied the field with regard to the remediation of such properties, thereby preventing the court from preempting RIDEM's authority to select and oversee the appropriate remedy. Moreover, were this court to hear evidence and, for example, attempt to fashion specific remediation plans for the properties at issue here, such an effort would effectively usurp RIDEM's exclusive authority to select, authorize, regulate, and generally oversee the remediation of contaminated property in Rhode Island.

## II. <u>RIDEM Has Exclusive Authority To Regulate And Address Environmental Issues In The State</u>

In the RIDEM enabling legislation, R.I.G.L., §§ 42-17.1-1 *et seq.*, the General Assembly provided RIDEM, through its director, with extensive powers and duties "to supervise and control the protection, development, planning, and utilization of the natural resources of the state . . ." R.I.G.L. §42-17.1-2(1). In the years since RIDEM was created, the General Assembly has vested the Department with the power and authority to implement an extensive statutory scheme that covers a myriad of environmental issues, including the two statutory schemes for regulating,

and managing hazardous waste (HWMA) and to determine the proper remediation of contaminated properties within the state (IPRRA).

These statutes, along with the regulations promulgated and implemented by RIDEM thereunder, apply state wide to completely occupy the field of environmental law for the State of Rhode Island. It is RIDEM's position that it fully occupies the field and has exclusive power to regulate contaminated property and the proper remediation thereof. This power, and the exclusivity thereof, is essential to the proper functioning of the statutory scheme, and to the efficient and proper cleanup of contaminated properties. As such, this power should not be impaired or usurped by the Courts' potentially ordering incompatible and/or conflicting remediation directives.

RIDEM is currently aggressively pursuing its case against Southern Union Company in the AAD action. If RIDEM's issuance of the NOV in that action is upheld, Southern Union will be required to submit remedial alternatives to RIDEM for approval. Once a remedial alternative is selected, RIDEM will oversee how the remediation will be implemented and completed through review and approval of each step of the remediation process. The remediation process is a complex and technical one, and it constitutes the core of the site remediation program that RIDEM administers uniformly across every contaminated site statewide.

It is RIDEM's position that the General Assembly intended, in enacting RIDEM's enabling legislation, HWMA, IPRRA, along with the myriad other environmental regulatory statutes that RIDEM oversees, for RIDEM to be the only body with the technical expertise to evaluate and manage complex environmental issues, including the selection, approval and oversight of appropriate site remediation. RIDEM therefore respectfully requests that this Court "honor that legislative intent and refuse to substitute its judgment for the judgment" of RIDEM.

*South County Gas Co. v. Burke,* 551 A.2d 22 (R.I. 1988) (Public Utilities Commission enabling legislation made it clear that Legislature intended to establish administrative body to evaluate technical evidence and address complex problems).

## III. This Court has the Authority and Jurisdiction to Award Injunctive Relief in the form of Nuisance Abatement

Section 10-1-1 of the Rhode Island General Laws allows for the court to award injunctive relief to a plaintiff who prevails on a claim of public nuisance, in the form of an order for defendant to abate the nuisance. The Plaintiffs in this matter have presented a claim for nuisance, and RIDEM does not dispute that the Court has well-established jurisdiction and authority to award injunctive relief in the form of an abatement of the nuisance should the Court find that the claim is valid and a nuisance exists under these circumstances.[1]

Based on all of the statutes and regulations establishing RIDEM's authority to investigate and determine appropriate remediation of contaminated properties, to supervise, and to generally control the remediation of contaminated properties, it is RIDEM's position that should the court agree with Plaintiffs that the presence of contamination on their properties constitutes a nuisance, and wish to award injunctive relief ordering NEGC to abate that nuisance through a remediation of the property at issue, the authority of the court is limited by the General Assembly's clear intent that RIDEM occupy the field of regulating and overseeing contaminated site remediations in the state. Thus, RIDEM believes that the Court, in ordering NEGC to perform a remediation of the property, may only order NEGC to undertake remediation in accordance with RIDEM's statutes and regulations, and under the oversight and with the approval of RIDEM, subject to RIDEM's exclusive authority to investigate and determine appropriate remediation of

[1] RIDEM takes no position with regard to the merits of Plaintiffs' nuisance claims, but raises the issue merely to address what would constitute a proper remedy in the event that the Court should find in Plaintiff's favor regarding the existence of a nuisance.

contaminated properties, to supervise, and to generally control the remediation of contaminated properties. NEGC would then be required to submit remedial alternatives to RIDEM for review and approval, followed by the submission of a Remedial Action Work Plan and all of the remaining steps in the complex and technical site remediation process.

The Plaintiffs seek from this Court a specific remediation order. Pursuant to Rhode Island law, only RIDEM can determine whether a particular plan for remediation is appropriate, where remediation is required, and the extent to which remediation is required. While RIDEM appreciates Plaintiffs' interest in obtaining a specific remedy from this Court, RIDEM must assert and protect its right and duty to make specific remediation determinations. RIDEM has extensive technical expertise and resources necessary to determine and select the appropriate features of an environmental cleanup, including (1) the extent of any contamination that requires cleanup; (2) the appropriate cleanup levels and goals; (3) the methods and techniques for the cleanup, e.g. removal versus soil vapor extraction; (4) the testing protocols to determine whether the remediation has met the cleanup standards; and (5) the public notice and participation process which is managed by RIDEM. RIDEM employs environmental engineers, remediation specialists, risk assessment experts, geologists, hydro-geologists, and other experts to direct these determinations. This significant experience and technical expertise permits RIDEM to regulate and make appropriate decisions in enforcing the State's environmental laws.

RIDEM disagrees with NEGC's arguments that the Court, under the Burford abstention doctrine, must completely abstain from considering the issue of remediation. To the contrary, it is RIDEM's position that the court may, in its discretion, consider and decide on Plaintiff's nuisance claims, and that should the Court find the presence of a nuisance, the Court may order NEGC to perform a remediation of Plaintiffs' property, subject again to RIDEM's exclusive

authority to investigate and determine appropriate remediation of contaminated properties, to select, supervise, and to generally control the remediation of contaminated properties. The standard for Burford abstention, as set out in NEGC's motion, is that the Court should decline to interfere:

> (1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive to state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.D. 350 (1989). It is RIDEM's position that Burford abstention does not provide for a complete bar to the Court's issuance of a remediation order in the instant matter. If the court were to decide that a nuisance is present, and to order NEGC to remediate the property under RIDEM's supervision, and in accordance with the applicable statutes and regulations, RIDEM believes that there would be no interference with the AAD proceedings, or with the Departments exclusive authority and policy directives in regulating and overseeing contaminated site remediation within the state. Should the Court decide to order NEGC to perform a remediation of Plaintiff's property, therefore, it is RIDEM's position that the Court must then defer to RIDEM's authority to regulate and oversee the remediation process itself. By ordering NEGC to remediate the property in accordance with RIDEM statutes and regulations, and under the supervision and control of RIDEM, then, there would be no disruption of "state efforts to establish a coherent policy." *New Orleans Public Service, Inc.*, 491 U.D. at 362. However, to fashion a remedy otherwise would potentially interfere with RIDEM's statutory duties "to supervise and control the protection, development, planning, and utilization of the natural resources of the state . . .", and would disrupt "state

efforts to establish a coherent policy." R.I.G.L. §42-17.1-2(1); *New Orleans Public Service, Inc.*, 491 U.D. at 362.

**IV. RIDEM Is Entitled To Deference With Regard To The Technical Details Of Any Remediation Activity**

Regarding NEGC's arguments that deference to RIDEM is proper, RIDEM agrees that deference to the Department is proper, as opposed to the alternative of the Court electing to entertain and potentially order a specific, technical remediation as a form of injunctive relief. RIDEM does not dispute that the Court has the authority to order that a remediation take place, but respectfully asserts that RIDEM alone has the jurisdiction and authority to select an appropriate remedy and to review and approve the technical details of any such remediation of contaminated property, and agrees that the court must defer to RIDEM concerning such details. RIDEM is the exclusive agency with the technical knowledge and expertise to select, approve and oversee a contaminated site remediation under IPRRA and the related regulations, and as such does deserve deference in that arena.

Each of the recent cases cited by Plaintiffs to support their argument that the Court may order a nuisance abatement in their Response in Opposition to NEGC's motion are illustrative of RIDEM's position. In *Reitsma v. Recchia*, 2000 WL 1781960, RIDEM was a named plaintiff in the case, and the court ordered a specific remedy, as was presented and approved by RIDEM as a named party to the action. In *Zanni v. Arboretum Dev.*, 1988 WL 1017288, where RIDEM was not a party to the case, the court-ordered injunctive remedy was a simple award of the cost of a floor replacement for plaintiff and installation of a drainage system on defendant's property to protect plaintiff's property in the future. No technical details of said drainage system were addressed, but were left for determination of appropriateness by those with the expertise to make

such determinations, and approval of said system was, presumably, left to RIDEM. Finally, in *Pine v. Vinagro*, 1996 WL 937004, RIDEM was also a named plaintiff to the action, with the ability, as a party, to present and approve the specific remedy awarded by the court for the remediation.

RIDEM agrees with NEGC's argument regarding the doctrine of primary jurisdiction only to the extent set out above. The Process of property remediation is one that lies within RIDEM's primary jurisdiction. Should the Court elect to order remediation, RIDEM satisfies the three factor test for primary jurisdiction: (1) determination of what constitutes a proper remediation of the Plaintiff's property lies at the heart of the task assigned to RIDEM by the legislature under IPRRA; (2) Agency expertise is required to unravel the technical facts surrounding the proper and appropriate remediation of any wastes, including what is at issue at this property, and RIDEM exclusively possesses that expertise, stemming from its history and ongoing investigation and regulatory procedure regarding these properties in particular; and (3) RIDEM's expert technical determination of what constitutes an appropriate remediation of Plaintiff's property would clearly aid the Court if the Court were in a position to fashion its own remediation order. *See United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (Holding that deference should be given when resolution of issues under a regulatory scheme have been placed within the special competence of an administrative body); s*ee also Commonwealth of Mass. v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 992 (1st Cir. 1995). Thus, RIDEM respectfully urges the Court to defer to RIDEM's statutory and regulatory authority to select, review and approve the proper and appropriate remediation for the Bay Street Neighborhood.

## V. <u>Conclusion</u>

For the foregoing reasons, RIDEM requests that it be permitted to intervene in this matter for the purpose of responding to NEGC's Motion for Partial Judgment on the Pleadings, and further requests that the above stated response and position of RIDEM be considered by the Court in rendering a decision on that Motion.

Dated: December 17, 2007

Respectfully submitted,
STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
By its attorney,

/s/ Susan B. Forcier
Gregory S. Schultz; RI Bar No. 5570
Susan B. Forcier; RI Bar No. 7278
RIDEM – Office of Legal Services
235 Promenade Street, 4th Floor
Providence, RI 02908
Tel. – (401) 222-6607
Fax - (401) 222-3378

Lewis S. Wiener, Esq.
Admitted *pro hac vice*
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
Telephone: (202) 383-0140
Facsimile: (202) 637-3593

**Certificate of Service**

This document has been filed electronically pursuant to "AP for Electronic Filing in the United States District Court for the District of Rhode Island," Admin. Order 2006-01. This document is available for viewing and downloading via the court's Electronic Case Filing System at *https://ecf.rid.uscourts.gov/*.

Service upon the following parties was completed electronically via the ECF system on December 17, 2007, pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01:

Gregory L. Benik gbenik@jreri.com, mbiagetti@jreri.com

Jeffrey Bromme jeffrey_bromme@aporter.com

David A. Cetola dcetola@mcrobertslaw.com

David A. Crichlow david.crichlow@pillsburylaw.com

Christina C. Dodds CDodds@bishoplondon.com

David M. Goldberg david.goldberg@pillsburylaw.com, catherine.mcculley@pillsburylaw.com, judy.way@pillsburylaw.com

Eric D. Herschmann eherschmann@kasowitz.com

Heather Spurlock Kennealy hskennealy@mcrobertslaw.com

Neil T. Leifer nleifer@tenlaw.com

Robin-Lee Main rmain@haslaw.com, sjfoster@haslaw.com

John J. McConnell , Jr jmcconnell@motleyrice.com

Robert J. McConnell bmcconnell@motleyrice.com, lgrande@motleyrice.com

Christopher P. McCormack cmccormack@pullcom.com

Brad J. Mitchell bmitchell@tenlaw.com

Michael D Mitchell mmitchell@admin.ri.gov

Anthony F. Muri amuri@murilaw.com

Jonathan D Orent jorent@motleyrice.com

Gerald J. Petros gpetros@haslaw.com, clomas@haslaw.com

Mark W. Roberts mroberts@mcrobertslaw.com

David E. Ross dross@kasowitz.com

Paul M. Sanford psanford@burnslev.com, scook@burnslev.com

Jeanne M. Scott jeannescott@utrlaw.com

Kristen W. Sherman ksherman@apslaw.com, afontaine@apslaw.com, btallman@apslaw.com

Kimberly A. Simpson ksimpson@vetterandwhite.com

Matthew B. Smith matthew@verdecchialaw.com

Aileen L. Sprague asprague@motleyrice.com

Christian Bennett White Stephens cstephens@taylorduane.com

John A. Tarantino jtarantino@apslaw.com, dhumm@apslaw.com

Bruce Gregory Tucker btucker@legalmgt.com

Christian F. Uehlein cuehlein@tenlaw.com

Craig R. Waksler cwaksler@taylorduane.com

Benjamin V. White , lll bwhite@vetterandwhite.com

William D Wick bwick@ww-envlaw.com

David B. Willis dwillis@legalmgt.com

David A. Wollin dwollin@apslaw.com, dciuffetelli@apslaw.com, epickett@apslaw.com

/s/ Susan B. Forcier

Service upon the following parties was completed by first class mail, postage prepaid on December 17, 2007:

Seth Davis
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019

Matthew B. Kirsner
Troutman Sanders, LLP
P.O. Box 1122
1001 Haxall Point
Richmond, VA 23208

Noelle Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

Michael K. Marran
P.O. Box 6067
321 South Main St.
Suite 200
Providence, RI 02940-6067

Andrew G. Mauck
Troutman Sanders LLP
P.O. Box 1122
1001 Haxall Point
Richmond, VA 23208

Kerry T. Ryan
Tarlow, Breed, Hart & Rodgers P.C.
101 Huntington Avenue
Prudential Center
Suite 500
Boston, MA 02199

Emily C. Shanahan
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue
Prudential Center
Suite 500
Boston, MA 02199

/s/ Susan B. Forcier