UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al.<br>*Plaintiffs,*<br>vs.<br><br>NEW ENGLAND GAS COMPANY, INC.,<br>*Defendant/Third-Party Plaintiff,*<br>vs.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, et al.<br>*Third-Party Defendants* | C.A. No. 05-0221T (Lead Case)<br>(Related and Consolidated Cases: 05-274T; 05-370T; 05-522T) |

**DEFENDANT NEW ENGLAND GAS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL RANSOM ENVIRONMENTAL CONSULTANTS, INC. DOCUMENTS**

Plaintiffs seek to withhold from New England Gas Company ("NEGasCo") thousands of pages of documents prepared by or in conjunction with Ransom Environmental Consultants, Inc. ("Ransom"). These documents were prepared in a non-litigation context years before this lawsuit was commenced and are not entitled to the protections of the attorney-client privilege or the work product doctrine. Therefore, this Court should grant NEGasCo's motion to compel.

## BACKGROUND FACTS

In August of 2002, allegedly contaminated soil was discovered in the Town of Tiverton (the "Bay Street Area"). On March 17, 2003, the Rhode Island Department of Environmental Management ("RIDEM") issued a Letter of Responsibility to the Southern Union Company of which NEGasCo is an unincorporated division.[1] Shortly thereafter, the Town of Tiverton agreed to test those properties within a set boundary (the "Study Area"). Properties owned by Plaintiffs Janice Carroll and the Simpson Estate (the "Simpsons") were initially excluded from the Study

[1] RIDEM also issued Letters of Responsibility to the Town of Tiverton and to Starwood Tiverton LLC on October 8, 2002.

Area by RIDEM because these properties were formerly owned by John Simpson who operated a hauling and contracting business in the Tiverton area during the relevant period and, accordingly, was perceived to be a responsible party.

In an attempt to obtain testing for their properties, the Simpsons retained the law firm of Nixon Peabody to lobby RIDEM to include their properties within the Study Area. Nixon Peabody and/or the Simpsons retained Ransom to assist with those lobbying efforts and, in particular, to conduct comprehensive fact research that would support the Simpsons' request to have their properties tested. In the process, and as revealed by Ransom's June 9, 2004 report which has been produced to NEGasCo, Ransom uncovered important facts concerning the Simpson properties as well as the historical development of the Bay Street Area. The documents in dispute here concern Ransom's work as an environmental consultant for the Simpsons. As illustrated by Plaintiffs' privilege log, the work performed by Ransom was conducted well in advance of the commencement of this litigation and is entirely related to the Simpsons' lobbying efforts.

In April of 2007, NEGasCo served a subpoena on Ransom.[2] In May, Ransom produced several boxes of documents to Motley Rice LLC to be reviewed for any potential privilege. In September of 2007, Plaintiffs produced a small subset of the Ransom documents. Plaintiffs' production was not accompanied by a privilege log despite the fact that a large number of the Ransom documents were being withheld.

It was not until October 5, 2007, some seven months after the subpoena was served, that Plaintiffs provided NEGasCo with a partial privilege log. That privilege log was deficient in several respects. First, the log failed to provide sufficient detail about the documents being withheld for NEGasCo to ascertain the applicability of the claimed privilege. Second, the log

[2] The subpoena is identified as Docket No. 195.

summarily asserted the attorney-client privilege and/or the work product doctrine as the basis for non-disclosure, but failed to offer any explanation for the claimed privilege.

By letter dated November 9, 2007, NEGasCo notified Plaintiffs' counsel that the privilege log was deficient.[3] Citing this Court's June 27, 2007 Memorandum and Order, NEGasCo disputed the claim that any privilege could be asserted for the documents relating to the Simpsons' efforts to lobby for their properties to be part of the Study Area merely because counsel was involved. Additionally, NEGasCo argued that, even if the documents were privileged, Plaintiffs failed to meet their burden of establishing these protections because the privilege log was deficient. Lastly, NEGasCo claimed that any privilege was waived when Ransom disclosed the results of its research to others, including RIDEM and Louise Durfee.

After more than one month, Plaintiffs' counsel responded by letter dated December 17, 2007. The letter summarily stated that Nixon Peabody was retained in 2003 by Janice Carroll and the Simpson Estate "to provide legal counsel and advice concerning the properties they owned that are subject to the Tiverton moratorium" and that Ransom was hired to help Nixon Peabody in rendering legal advice to Janice Carroll and the Simpson Estate. No further detail was provided. Plaintiffs also enclosed a revised privilege log that purported to contain "additional detail and information to help [NEGasCo] in ascertaining the nature of the privilege being asserted."[4]

As detailed below, Plaintiffs' privilege log is inadequate and fails to sustain their burden of justifying the claim of privilege. Moreover, even Plaintiffs' cursory log makes clear that the documents at issue are not privileged in the first instance. They were not prepared in anticipation of this litigation and cannot reasonably be said to have been prepared or exchanged

---

[3] A copy of NEGasCo's November 9, 2007 letter is attached hereto as Exhibit A.
[4] A copy of the December 17, 2007 letter and privilege log are attached hereto as Exhibit B.

as part of Nixon Peabody's rendering of legal advice to Janice Carroll and the Simpson Estate. On the contrary, they were all prepared or exchanged in connection with Nixon Peabody's non-privileged lobbying services. Even if the documents are ultimately deemed to contain privileged material, the privilege log is over-inclusive and Plaintiffs should be compelled to redact or otherwise produce the non-privileged portions of the documents in dispute. Finally, to the extent that the content of the documents in the log has been disclosed to third parties, any privilege that existed has been waived.

## LEGAL ARGUMENT

### I. Plaintiffs Have Failed to Meet Their Burden of Establishing That the Ransom Documents Are Privileged

It is well-settled that a party claiming a privilege has the initial burden of establishing that the privilege applies and has not been waived. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). As this Court recognized in its June 27, 2007 Memorandum and Order, "[a] failure by the party claiming privilege to adequately describe the documents at issue, to sufficiently explain the basis for the privilege, or to assert the privilege in a timely manner, may be grounds for rejecting the claim." Corvello v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D.R.I. 2007) (citing Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). This Court has further stated that a privilege log must contain "meaningful information regarding the contents of the documents or the purposes for which they were prepared. 243 F.R.D. at 35-36.

Plaintiffs' most recent privilege log is inadequate to justify Plaintiffs' claims of privilege therein. Many entries fail to identify either (i) the purpose underlying the preparation of the document or (ii) why the document satisfies the privilege. See 6-26 *Moore's Federal Practice-Civil § 26.90* (A log must contain "[t]he purpose for preparing the document or communication,

[t]he privilege or privileges asserted for the document or communication, and [h]ow the document or communication satisfies the asserted privilege or privileges."). In this case, Plaintiffs have done little more than insert summary language to each entry indicating that each document was obtained, prepared and/or reviewed "in anticipation of litigation." Merely reciting the language of the standard without any explanation as to how the standard is met is plainly insufficient to justify non-disclosure. As this Court has recognized, such "'bald faced assertion[s]' are insufficient." Corvello, 243 F.R.D. at 33 (quoting Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 542 (10th Cir. 1984)).

Other entries are entirely too vague for NEGasCo to even evaluate the claim of privilege. For example, REC 1929-1932 refers only to "information gathered at the request of counsel w/ handwritten notes" and fails entirely to indicate the subject matter of the communication. Similarly, REC 1935 is described as an "e-mail re info supplementing information gathered at the request of counsel" with no subject matter identified. Several other entries are similarly devoid of adequate detail about the content of the communications that are listed.[5] Therefore, Plaintiffs' have failed to sustain their initial burden of demonstrating that any privilege applies.

## II. The Ransom Documents That Were Prepared and Exchanged as Part of Nixon Peabody's Lobbying Efforts are Not Privileged

While Plaintiffs' privilege log falls far short of containing the required detail, even the cursory log that was provided makes clear that the documents contained therein cannot reasonably be withheld from disclosure under a claim of privilege. Not every document prepared by or at the behest of an attorney is privileged. The work product doctrine is intended to protect the role that an attorney plays in the adversarial process. Under Fed. R. Civ. P.

[5] See REC 1936-1938; REC 1939; REC 1940; REC 1942-1943; REC 1944-45; REC 1946-1947; REC 1958; REC 1969-1970; REC 1971; REC 1972-1974; REC 1985; REC 1986; REC 1987-1988; REC 1993; REC 2091; REC 2185-2200; REC 3198-3199; REC 3200; REC 3201-3202; REC 3203-3204; REC 3205-3206; REC 3206; REC 3214; REC 3240; REC 3242-3244; REC 3284; REC 3288-3290; and REC 3292-3293.

26(b)(3), a claim for work-product protection will only prevail if the documents in dispute were prepared "in anticipation of litigation." The First Circuit, in evaluating the work product doctrine, has adopted the "because of" test, which requires a court to determine whether the document at issue was prepared or obtained because of prospective litigation. See United States v. Textron, Inc., 2007 U.S. Dist. LEXIS 63921, at *25 (D.R.I. Aug. 29, 2007).

In the present case, the documents being withheld were not prepared "because of" or in anticipation of litigation. Some of the documents were prepared long before even the March 2003 Letter of Responsibility to NEGasCo was issued.[6] For example, Plaintiffs seek to protect a 1918 property diagram as work product. Other documents were prepared by third parties or contain information in the public domain.[7] Many documents are undated and could have also been prepared too far in advance of litigation to justify Plaintiffs' bald assertions that they were prepared in anticipation of litigation.[8]

However, even if the documents were prepared sufficiently close to the onset of litigation to raise the inference that they were done in anticipation of litigation, the work product doctrine would still not apply. Where an attorney acts as a lobbyist, "matters conveyed to the attorney for the purpose of having the attorney fulfill the lobbyist role do not become privileged by virtue of the fact that the lobbyist has a law degree or may under other circumstances give legal advice to the client . . . ." Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine*, 239 (ABA Section of Litigation, 4th ed. 2001). The federal courts, in evaluating claims

[6] See REC 54; REC 64; REC508-553; REC 554-616; REC 2142-44; REC 2148-56; REC 2157-62; and REC 2171-2178.

[7] See REC 54; REC 64; REC 1913 and 1917; REC 1948-1956; REC 2096-2097; REC 2110-2118; REC 2127; REC 2142-2144; REC 2148-2156; REC 2171-2178; REC 2206-2210; REC 2211-2213; REC 2214; REC 3208-3213; REC 3222-3239; REC 3245; and REC 3295-3299.

[8] See REC 65; REC 1667; REC 2163-2170; REC 2182-2184; REC 2206-2213; REC 2214; and REC 2218-2220.

of work product, have routinely rejected the application of the work product doctrine where the documents in dispute were not part of the rendering of legal advice.[9]

Similarly, the attorney-client privilege does not protect communications where the attorney is acting as a lobbyist rather than providing legal advice. See Wolf Creek Ski Corp., Inc. v. Leavell-McCombs Joint Venture, No. 04-CV-01099, 2006 WL 1119031, at *2 (D.Colo. April 25, 2006) (legislative meetings, progress reports and lobbying activities are not legal advice and do not are not protected by the attorney-client privilege).[10] In fact, this Court has observed that "[t]he attorney-client privilege protects confidential communications between an attorney and client relating to *legal advice sought from the attorney*." Textron, 2007 U.S. Dist. LEXIS 63921. at *14-15 (emphasis supplied).

In the present case, the documents in Plaintiffs' privilege log were not part of any litigation effort. Rather, they were prepared in connection with Nixon Peabody's efforts to lobby state and local authorities to include the Simpson properties in the testing area for the benefit of Janice Carroll and the Simpson Estate.[11] Nixon Peabody was not rendering legal advice in the

---

[9] See In re Grand Jury Subpoenas dated March 9, 2001, 179 F. Supp. 2d 270, 290 (S.D.N.Y 2001) (documents not protected by work product doctrine where attorneys "put legal trappings on what was essentially a lobbying and political effort."); P. & B. Marina, Ltd. v. Logrande, 136 F.R.D. 50, 59 (E.D.N.Y 1991) (citation omitted) ("[s]ummaries of legislative meetings, progress reports, and general updates on lobbying efforts" did not constitute rendering legal advice for purposes of the work product doctrine).

[10] In re Grand Jury Subpoenas, 179 F. Supp. 2d at 289-90 (attorney-client privilege not applicable where lawyers were acting principally as lobbyists and not primarily as lawyers); U.S. Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 164 (E.D.N.Y. 1994) ("Lobbying conducted by attorneys does not necessarily constitute legal services for purposes of the attorney-client privilege."); North Carolina Electric Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 517 (M.D.N.C. 1986) (although lobbying efforts were coordinated by attorneys, related communications including summaries and progress reports were not protected by attorney-client privilege where they did not refer to legal problems).

[11] See REC 54; REC 55; REC 63; REC 64; REC 65; REC 508-553; REC 554-616; REC 773-778; REC 1665-1665A; REC 1666-1666A; REC 1667; REC 1668-1668A; REC 1672-74; REC 1675-1676; REC 1677-1686; REC 1687-1689; REC 1690-1694; REC 1695-1696; REC 1697-1698; REC 1699; REC 1700; REC 1701; REC 1702-1705; REC 1706-1717; REC 1718-1722; REC 1723-1725; REC 1885-1886; REC 1887-1891; REC 1892-1902; REC 1903-1904; REC 1905; REC 1906; REC 1907; REC 1908; REC 1909; REC 1910; REC 1911-1912; REC 1913 and 1917; REC 1918-1919; REC 1920-21; REC 1922; REC 1923-1924; REC 1925-1927; REC 1928; REC 1933-1934; REC 1948-1956; REC 1957; REC 1959; REC 1960; REC 1961; REC 1962-1965; REC 1966-1968; REC 1982-1984; REC 1985; REC 1986; REC 1987-1988; REC 1989-1990; REC 1991-1992; REC 1993; REC 1994-2080; REC 2081-2085; REC 2086-2090; REC 2091; REC 2092; REC 2093-94; REC 2095; REC 2096-2097; REC

context of an adversarial proceeding and the fact that Carolyn Kaplan, the Nixon Peabody lawyer who assisted the Simpsons with their lobbying efforts, is an attorney does not *ipso facto* result in a blanket privilege. Under such circumstances, the Court should reject Plaintiffs' attempts to shield them through the work product doctrine and attorney-client privilege.

## III. <u>Even if the Documents in Dispute Have Some Privileged Information, Plaintiffs Cannot Justify Complete Non-Disclosure and Should Be Obligated to Produce Documents in Redacted Form</u>

Even if Plaintiffs could persuade this Court that some portions of the documents in the privilege log are covered by the work product doctrine or attorney-client privilege, they should nevertheless be required to produce all non-privileged portions of the documents. In many cases, it appears that Plaintiffs are claiming that documents are privileged due to the presence of handwritten notes.[12] Under the circumstances, where it is the notes that contain privileged information, the proper procedure would be to produce the documents with the notes redacted. <u>In re Grand Jury Subpoenas Duces Tecum</u>, 798 F.2d 32, 34 (2d Cir. 1986) ("[t]o the extent that one or more of the disputed documents is subject only in part to [a claim of privilege] appropriate redaction should be made [ ] and production of the unprivileged portion should

---

2098-2099; REC 2100-2103; REC 2104-2105; REC 2106-2109; REC 2110-2118; REC 2119; REC 2126; REC 2127; REC 2128-2131; REC 2132-2140; REC 2141; REC 2145-2147; REC 2163-2170; REC 2179-2181; REC 2182-2184; REC 2185-2200; REC 2201-2204; REC 2206-2210; REC 2211-2213; REC 2215-2217; REC 2218-2220; REC 3178-3180; REC 3191; REC 3192-3194; REC 3195-3197; REC 3198-3199; REC 3200; REC 3201-3206; REC 3207; REC 3208-3213; REC 3214; REC 3215-3227; REC 3232; REC 3233-3239; REC 3240; REC 3241; REC 3242-3244; REC 3245-3277; REC 3278-3283; REC 3284; REC 3290-3291; REC 3292-3293; REC 3295-3299; REC 3306; REC 3308-3313; and REC 3314-3315.

[12] <u>See</u> REC 54; REC 55; REC 63; REC 508-553; REC 554-616; REC 1665-1665A; REC 1666-166A; REC 1667; REC 1668-1668A; REC 1672-1674; REC 1675-1676; REC 1687-1689; REC 1690-1694; REC 1695-1696; REC 1697-1698; REC 1699; REC 1700; REC 1701; REC 1702-1705; REC 1706-1717; REC 1718-1722; REC 1723-1725; REC 1885-1886; REC 1887-1891; REC 1892-1902; REC 1903-1904; REC 1905; REC 1906; REC 1907; REC 1908; REC 1909; REC 1910; REC 1911-1912; REC 1913 and 1917; REC 1925-1927; REC 1929-1932; REC 1933-1934; REC 1948-56; REC 1966-1968; REC 1982-1984; REC 1989-1990; REC 1991-1992; REC 2081-2085; REC 2086-2090; REC 2091; REC 2092; REC 2093-2094; ; REC 2095; REC 2098; REC 2100-2103; REC 2104-2104; REC 2106-2109; REC 2110-2118; REC 2119; REC 2126; REC 2127; REC 2128-2131; REC 2132-2140; REC 2141; REC 2145-2147; REC 2163-2170; REC 2179-2181; REC 2182-2184; REC 2185-2200; REC 2206-2210; REC 2211-2213; REC 2215-2217; REC 2218-2220; REC 3208-3213; REC 3215-3227; REC 3232; REC 3245-3277; REC 3278-3283; REC 3295-3299; and REC 3314-3315.

follow."). Similarly, where only part of a document can be shown to be privileged, Plaintiffs should be obligated to produce the remaining non-privileged portions or pages.[13] As the federal courts have explained,

> It is not proper to withhold an entire document from discovery on grounds that a portion of it may be privileged. Where a document purportedly contains some privileged information, the unprivileged portions of the document must be produced during discovery. The proper procedure in such instances is to redact the allegedly privileged communication, and produce the redacted document.

Expert Choice, Inc. v. Gartner, Inc., No. 3:03CV02234, 2007 WL 951662, at * 6 (D. Conn. 2007). Therefore, Plaintiffs should be required to parse out and produce all segregable portions of the Ransom documents.

## IV. Information That Was Ultimately Disclosed to Third Parties Cannot Reasonably Be Deemed Privileged

Even if the exchanges of information between Nixon Peabody and Ransom are found to have been privileged, to the extent that the information was later disclosed to third parties, the privilege should be deemed to have been waived. According to an October 10, 2005 letter from Janice Carroll to Louise Durfee, Tiverton Town Council Member, "representatives of Ransom were in regular verbal and written contact with the [RIDEM]" and met with RIDEM on February 25, 2004 and on April 2, 2004 to disclose Ransom's research and information concerning the Simpson properties.[14] This information was also made available to Louise Durfee for her review.[15] The deliberate disclosure of such information amounts to a waiver and there is no basis for now claiming that such information is protected by either the attorney-client privilege or the work product doctrine.

---

[13] See REC 1913 and 1917; REC 1933-1934; REC 3208-3213; REC 3215-3227; REC 3233-3239; REC 3245-77; REC 3278-3283; and REC 3295-3299.
[14] See REC 00050-0053, attached hereto as Exhibit C.
[15] Id.

## CONCLUSION

Based on the foregoing, NEGasCo respectfully requests that this Court grant its Motion to Compel Ransom Environmental Consultants, Inc. Documents.

Dated: January 24, 2008

**ADLER POLLOCK & SHEEHAN P.C.**

By: *<u>/s/ Kristen W. Sherman</u>*
John A. Tarantino (#2586)
David A. Wollin (#4950)
Kristen W. Sherman (#5595)
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
(401) 351-4607 (fax)

**KASOWITZ, BENSON, TORRES & FRIEDMAN LLP**
Eric D. Herschmann
David E. Ross
Seth Davis
1633 Broadway
New York, New York 10019
(212) 506-1700

- and -

**BISHOP, LONDON & DODDS**
Christina Dodds
3701 Bee Cave Road, Suite 200
Austin, Texas 78746
(512) 479-5000

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company*

- and -

**HINCKLEY, ALLEN & SNYDER**
Gerald J. Petros (#2931)
Robin L. Main (#4222)
50 Kennedy Plaza
Providence, RI
(401) 274-2000

*Attorneys for Defendant*
*New England Gas Company,*
*an unincorporated division of*
*Southern Union Company, as to*
*Third-Party Defendants*
*Dominion Resources, Inc. and*
*Dominion Energy Brayton Point LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of January, 2008, I did send a true copy of the within document by electronic means (ECF) or email to the following:

Robert J. McConnell, Esq.
Michael G. Rousseau, Esq.
Jonathan D. Orent, Esq.
Motley Rice LLC
321 South Main Street
Providence, RI 02940

Neil T. Leifer
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Mark W. Roberts
McRoberts, Roberts & Rainer, LLP
53 State Street
Boston, MA 02109

Paul Revere, III, Esq.
Law Offices of Paul Revere, III
297 North Street, Suite 337
Hyannis, MA 02601

Jeanne M. Scott
Ursillo, Teitz & Ritch, Ltd
2 Williams Street
Providence, RI 02903

Christopher P. McCormack
Pullman & Comley LLC
850 Main Street
Bridgeport, CT 06601

Bruce Gregory Tucker, Esq.
55 Hammarlund Way
Middletown, RI 02842

Richard J. Zabbo, Esq.
Ratcliffe Burke Harten & Elias LLP
160 Financial Plaza
Providence, RI 02903

Gregory L. Benik
Benik & Associates
931 Jefferson Blvd., Suite 2008
Warwick, RI 02886

Paul M. Sanford
Burns & Levinson LLP
One Citizens Plaza
Suite 1100
Providence, RI 02903

David A. Crichlow
David M. Goldberg
Pillsbury Winthrop Shaw Pittman, LLP
1540 Broadway
New York, NY 10036

Craig Waksler
Taylor Duane Barton & Gilman LLP
10 Dorrance Street
Suite 700
Providence, RI 02903

Jeffrey Bromme
Arnold & Porter LLP
555 Twelfth Street, N.W.
Washington, DC 20004-1206

Benjamin V. White, III
Kimberly A. Simpson
Vetter & White, Incorporated
20 Washington Place
Providence, RI 02903

Anthony F. Muri
Muri Associates LLC
10 Weybosset Street
Providence, RI 02903

William David Wick
Wactor & Wick LLP
180 Grand Avenue
Suite 950
Oakland, CA 94612

Matthew B. Kirsner
Andrew G. Mauck
Troutman Sanders, LLP
P.O. Box 1122
1001 Haxall Point
Richmond, VA 23208

*/s/ Kristen W. Sherman*

442062_1.DOC