**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

GAIL, JOHN D. and John F. CORVELLO, et al,

Plaintiffs,

v. C.A. No. 05-221T

NEW ENGLAND GAS COMPANY, INC.,

Defendant;

KEVIN BURNS, et al.

Plaintiffs,

v. C.A. No. 05-274T

SOUTHERN UNION COMPANY dba
FALL RIVER GAS AND NEW ENGLAND GAS

Defendants;

COLLEEN BIGELOW, et al.

Plaintiffs,

v. C.A. No. 05-370T

NEW ENGLAND GAS COMPANY, formerly known as
FALL RIVER GAS COMPANY, an
unincorporated division of
SOUTHERN UNION COMPANY,

Defendants;

SHEILA REIS, et al.

Plaintiffs,

v. C.A. No. 05-522T

SOUTHERN UNION COMPANY dba
FALL RIVER GAS AND NEW ENGLAND GAS
Defendants.

# MEMORANDUM AND ORDER DENYING DEFENDANT NEG'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

More than 120 residents of Tiverton, Rhode Island brought these actions against New England Gas Company ("NEG") alleging that their properties have been contaminated by hazardous substances contained in coal gasification wastes buried in the soil on or near their properties and that NEG is responsible. The plaintiffs seek both monetary damages and injunctive relief, including abatement of the alleged nuisance.

NEG has moved for partial judgment on the pleadings with respect to the claims for injunctive relief, contending that any determinations with respect to remedial action must or should be made by the Rhode Island Department of Environmental Management ("RIDEM"). For the reasons hereinafter stated, the motion for partial judgment on the pleadings is denied.

## Background

The facts underlying these cases have been recited in several prior decisions by this Court and they need not be repeated here. Corvello v. New England Gas Co., Inc., 460 F.Supp.2d 314 (D.R.I. 2006); Corvello v. New England Gas Co., Inc., 243 F.R.D. 28 (D.R.I. 2007). For present purposes, the relevant facts may be summarized as follows.

The plaintiffs own and reside on 90 parcels of land in the Town of Tiverton (the "Town"). In August 2002, the Town was

installing a sewer interceptor line near the plaintiffs' properties. During the course of excavation, workers discovered what RIDEM determined to be "coal gasification waste material" containing various toxic and hazardous substances. Further investigation disclosed that these substances were present in the soil under the streets in the area and on some of the surrounding properties. Based on RIDEM's findings, the Town imposed an emergency moratorium which banned all excavation and precluded the issuance of building permits for any construction requiring excavation in an area encompassing the plaintiffs' properties.

Shortly thereafter, RIDEM concluded that a nearby facility operated by NEG was the source of the coal gasification waste and RIDEM sent a "letter of responsibility" to NEG. In September 2006, after NEG had denied responsibility, RIDEM initiated administrative enforcement proceedings against NEG. Those proceedings still are pending; and, to date, it does not appear that any work has been undertaken to remediate the site.

The plaintiffs brought these actions in 2005, asserting claims for negligence, strict liability, and public nuisance.[1] The plaintiffs seek damages for what they allege has been the

---

[1] Claims for gross negligence, private nuisance, intentional or negligent infliction of emotional distress and violation of the Rhode Island Hazardous Waste Management Act have been dismissed. See Corvello v. New England Gas Company, Inc., 460 F. Supp. 2d 314 (D.R.I. 2006).

diminution in value and the loss of full use and enjoyment of their properties and for what some of them claim are adverse health effects resulting from continued exposure to the hazardous substances. In addition, the plaintiffs seek injunctive relief, which includes abatement of the alleged nuisance. More specifically, the Corvello and Reis plaintiffs seek "such injunctive relief . . . as necessary to assure that the plaintiffs have a complete and effective remedy," Reis Complaint at 12, and the Burns and Bigelow plaintiffs seek an injunction requiring NEG to "pay money into a fund sufficient to clean and remediate the contamination," Bigelow Complaint at 14.

**Standard of Review**

In ruling on a motion for judgment on the pleadings, a court "must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004)). Such a motion may be granted only if it appears that the plaintiffs cannot prove any set of facts entitling them to relief. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).

## **Analysis**

I. The Injunctive Relief Requested

NEG's motion for partial judgment on the pleadings asks for a "finding that the plaintiffs cannot obtain relief in this proceeding requiring NE Gas Co. to remediate their properties." Def.'s Mem. at 1. Thus, NEG's motion and its contention that this Court cannot order NEG to "remediate" the plaintiffs' properties appears to rest on the premise that the "injunctive relief" sought by the plaintiffs would require NEG, itself, to undertake specific remedial action. However, that is not what the complaints say. As already noted, the complaints describe the requested injunctive relief only as that which is "necessary to assure that the plaintiffs have a complete and effective remedy" and as an order requiring NEG to pay a sum of money sufficient to remediate their properties.

II. Timeliness and Merits of the Motion

Even if the complaints are construed as seeking an injunction ordering NEG, itself, to take specific remedial action, NEG's motion for partial judgment on the pleadings is, at best, premature.

NEG makes two arguments in support of its motion. First, it argues that, in Rhode Island, a landowner has no common law right to remediation of property contaminated by hazardous

substances and that the authority to address such contamination is vested exclusively in RIDEM. Second, NEG argues that, even if a common law right to remediation exists, this Court should defer to RIDEM under the doctrines of Burford abstention and/or primary jurisdiction.

A. Existence of Common Law Right to Remediation

In essence, NEG argues that a landowner is precluded from seeking abatement or other injunctive relief for contamination of his property by hazardous substances when the contamination violates state environmental laws. That argument is not supported by either logic or law.

It is a well-established principle, both in Rhode Island and elsewhere, that for every wrong there is an appropriate remedy. See R.I. Const., Art. I, § 5 ("Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character."); see also Stoneridge Inv. Partners v. Scientific-Atlanta, 128 S.Ct. 761, 779-80 (2008) (Stevens, J. dissenting) (discussing the history of the "basic principle animating our jurisprudence" that "every wrong shall have a remedy"). This principle finds expression in nuisance cases and, more specifically, in nuisance cases involving environmental contamination, where injunctive relief for

abatement consistently has been recognized as an appropriate remedy. See Reitsma v. Recchia, 2000 WL 1781960, at *6 (R.I. Super. 2000) (issuing a mandatory injunction to abate a nuisance caused by solid waste); Clark v. Asheville Contracting Co., Inc., 316 N.C. 47 (N.C. 1986) (recognizing the availability of a mandatory injunction to remediate waste that creates a nuisance); State v. Schenectady Chemicals, Inc., 459 N.Y.S.2d 971, 976-77 (N.Y. Sup. Ct. 1983) (upholding under public nuisance law, state claim to compel cleanup of a chemical waste site). Indeed, abatement of a nuisance is defined to include "removal . . . of that which causes a nuisance." Sealy Connecticut, Inc. v. Litton Indus., Inc., 989 F.Supp. 120, 126 (D.Conn. 1997) (quoting Black's Law Dictionary, 1066 (6th ed. 1991)).

NEG's reliance on Hydro-Manufacturing Inc. v. Kayser-Roth Corp., 640 A.2d 950 (R.I. 1994), for the proposition that Rhode Island does not recognize a common law duty to remediate is misplaced. Hydro-Manufacturing dealt with the very narrow question of whether an owner of property owes a duty to future owners to refrain from engaging in activities that contaminate the property. The Hydro-Manufacturing court held that no such duty was owed because "the duty that sellers owe to subsequent purchasers is established primarily through contracts between

the parties who theoretically reach an arm's-length agreement on a sale price that reflects the true value of the land." Hydro-Manufacturing, 640 A.2d at 955 (citations omitted).

As this Court noted in Corvello, 460 F.Supp.2d 314, the rationale underlying the decision in Hydro-Manufacturing was that a purchaser of property has an opportunity to inquire whether the previous owner engaged in activities that may have contaminated the property and, if so, the purchaser can bargain with the owner to remediate the property or reduce the sale price. As this Court also noted, the instant cases are readily distinguishable from Hydro-Manufacturing because, here, there is no indication that the plaintiffs' properties were purchased from or previously owned by NEG and, therefore, there is no basis for inferring that the plaintiffs were alerted to the possibility that the properties had been contaminated or had an opportunity to protect themselves. Accordingly, Hydro-Manufacturing does not negate a landowner's common law right to seek abatement as a remedy for the contamination of his property.

In any event, in addition to their common law right, the plaintiffs also have a statutory right to injunctive relief under Rhode Island General Laws § 10-1-1, which expressly confers on a private citizen the right to bring an action "to

abate [a] nuisance and to perpetually enjoin the persons or persons maintaining the nuisance."

B. Preemption

NEG argues that any right that the plaintiffs may have had to injunctive relief, at least in the form of remediation, has been preempted by the Industrial Property Remediation and Reuse Act ("IPRRA"), R.I. Gen. Laws §§ 23-19.14-1 et seq., and the Hazardous Waste Management Act ("HWMA"), R.I. Gen. Laws §§ 23-19.31-1 et seq. NEG describes these statutes as creating "a comprehensive statutory scheme" that "[occupies] the field of investigating and remediating contamination" and vest RIDEM with "exclusive authority to implement the cleanup of real property in Rhode Island." Def.'s Mem. at 4-5. This argument is not convincing for several reasons.

First, the argument erroneously equates RIDEM's exclusive authority to seek remediation pursuant to the provision of these statutes with a legislative intent to preempt a landowner's well-established right to seek remediation as a remedy in an action to abate a nuisance or in some other tort action against a party allegedly responsible for contaminating his property.

Preemption may be found only where legislative intent to preempt is clear and unequivocal. Barnett Bank of Marrion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996). That is

especially true in the case of statutes that are said to operate in derogation of common law because there is a "presumption that statutes should not be construed to alter common law principles absent an explicit statement of legislative intent to do so." In re Valente, 360 F.3d 256, 261 (1st Cir. 2004. Under Rhode Island law, such statutes must be strictly construed. Providence Journal v. Rodgers, 711 A.2d 1131, 1134 (R.I. 1998).

Here, the fact that the General Assembly enacted legislation regulating hazardous wastes and giving RIDEM authority to enforce the legislation does not demonstrate an intent to extinguish the common law right of a landowner to seek abatement or other injunctive relief in an action against the party allegedly responsible for contaminating the landowner's property. On the contrary, the fact that Gen. Laws § 10-1-1 expressly permits a private citizen to seek abatement or injunctive relief in an action for nuisance compels the conclusion that IPRRA and HWMA were not intended to preempt that right.

C. Deference to RIDEM

NEG argues that even if the plaintiffs have a right to seek remediation or other injunctive relief, this Court should not entertain any request for remediation, but, instead, should leave it to RIDEM to do whatever is necessary in order to

remediate the plaintiffs' properties. NEG argues that deferring to RIDEM is a course counseled by the doctrines of Burford abstention and/or primary jurisdiction. However, those arguments are not persuasive either.

1. Burford Abstention

In general, a federal court has a "virtually unflagging" duty to adjudicate claims within its jurisdiction. E.g., Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996); New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 359 (1989). However, in certain "extraordinary and narrow" circumstances, a court may or should abstain. See Quackenbush, 517 U.S. at 728. One of those circumstances has been referred to as Burford abstention, which the Supreme Court has described as follows:

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989).

In this case, there are no difficult questions of state law to be answered. The only issues raised by the invocation of Burford abstention are: (1) whether a "timely and adequate" state remedy is available to the plaintiffs and (2) whether this Court's exercise of its jurisdiction over the "injunctive relief" claim would be "disruptive of state efforts to establish a coherent policy" with respect to remediation of hazardous wastes sites.

(a) "A Timely and Adequate" Remedy

However diligent RIDEM may have been in seeking to remediate the site that includes the plaintiffs' properties, nearly six years have elapsed since the moratorium was imposed and remediation work, apparently, has not yet begun. At least part of the explanation for the delay appears to be the complexity of the matter and the fact that NEG is vigorously contesting that it is responsible. Whatever the reason, the record in these cases does not provide any assurance that remediation will begin any time soon or that it will adequately address any contamination of the plaintiffs' properties.

(b) Disruption of RIDEM's Efforts

This Court recognizes that it should not interfere with RIDEM's efforts to remediate hazardous waste sites in accordance with the provisions of IPRRA or HWMA, and this Court is reticent

to substitute its judgment for that of RIDEM with respect to complex technical issues on which RIDEM has considerable expertise. However, this Court also recognizes that the factors usually counseling abstention must be weighed against the threat that abstention will deprive a party of a timely and effective remedy to which it may be entitled.

In this case, it seems unlikely that allowing the plaintiffs to pursue their claims for injunctive relief would interfere with or disrupt RIDEM's efforts to remediate the site. As already noted, it is not clear that the plaintiffs are even asking the Court to order NEG to take specific remedial action with respect to their properties let alone the entire site that is the subject of RIDEM's administrative enforcement proceedings. The only express reference to remediation contained in any of the complaints is the prayer that NEG be ordered to pay money into a fund that would be used to remediate the plaintiffs' properties.

Nor is there any reason, at this time, to believe that any remediation that might be ordered by the Court would interfere with RIDEM's remediation efforts. If this Court should order NEG to pay the cost of remediation as an element of the plaintiffs' damages or even to take specific action to abate the nuisance, nothing would preclude RIDEM from requiring NEG to

take whatever additional action RIDEM may deem necessary to remediate the site.

Indeed, RIDEM, itself, "does not challenge the Court's authority to hear and decide a nuisance claim and to order injunctive relief to abate the nuisance." RIDEM's Mem. at 2. It contends, only, that any injunctive relief should be limited to referring "all remediation determinations to RIDEM." RIDEM's Mem. at 2, 7. Whether such a delegation would be appropriate is a question that this Court need not address, now.

2. Primary Jurisdiction

The boundaries of the doctrine of primary jurisdiction are not very clearly defined and the parties' memoranda do not address its applicability to these cases in much depth. In essence, the doctrine discourages a court from acting on a claim over which it has jurisdiction "whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." United States v. Western Pac. R.R. Co., 352 U.S. 59, 64 (1956). The twin purposes of the primary jurisdiction doctrine are "to 'serve[] as a means of coordinating administrative and judicial machinery' and to 'promote uniformity and take advantage of agencies' special expertise.'" Pejepscot Industrial Park, Inc. v. Maine Central

Railroad Co., 215 F.3d 195, 205 (1st Cir. 2000) (quoting Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 580 (1st Cir. 1979)); see B.H. v. Gold Fields Mining Corp., 506 F.Supp.2d 792, 803 (N.D. Okla. 2007) (the two policy goals underlying the doctrine are: (1) to ensure "uniformity in determinations of certain administrative questions" and (2) to "promote resort to agency experience and expertise where the court is presented with a question outside its conventional experience.") Whereas Burford abstention rests on considerations of federalism and comity between federal courts and the states, primary jurisdiction rests on considerations of efficiency and comity between federal courts and administrative agencies.

The Supreme Court has said that "[n]o fixed formula exists for applying the doctrine of primary jurisdiction." Western Pac. R.R., 352 U.S. at 64. Among the factors that the First Circuit has said should be considered in deciding whether to defer to an administrative agency under the doctrine of primary jurisdiction are: "(1) whether the agency determination lies at the heart of the task assigned to the agency by [the legislature]; (2) whether agency expertise is required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court." Commonwealth of Massachusetts v.

Blackstone Valley Electric Co., 67 F.3d 981, 992 (1st Cir. 1995). Courts in the Tenth Circuit also have developed a similar list of factors that include: "(1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; (4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested." Gold Fields Mining, 506 F.Supp.2d at 803 (citing Schwartzman, Inc. v. Atchison, Topeka, & Santa Fe Railway, 857 F.Supp. 838 (D.N.M. 1994).

Several of these factors are similar to the factors considered in determining whether Burford abstention applies. For example, the question of whether the agency has shown diligence in resolving the issue is similar to the inquiry under Burford as to whether agency action will provide a timely remedy to the plaintiffs. Moreover, the type of relief requested has been described as an important factor because it bears on the likelihood that "a court's order will interfere with administrative agency's proceedings" which is at the heart of the Burford inquiry. Gold Fields Mining, 506 F.Supp.2d at 805. In any event, under both primary jurisdiction doctrine and Burford abstention, a court must look at the circumstances of

each case and weigh the factors militating in favor of or against deferring to the agency.

In this case, the record is not sufficiently developed to enable the Court to make that determination. As already noted, without knowing the nature and extent of any contamination; the type of remedial action that may be required or what progress has been made in RIDEM's administrative enforcement proceedings, this Court would have no basis for deciding whether "injunctive relief" might be appropriate; what that relief might be; whether it would interfere with RIDEM's efforts or whether there is a timely and effective remedy available to the plaintiffs. In short, NEG's argument that the Court should defer pursuant to Burford and/or the doctrine of primary jurisdiction is, at best, premature.

## Conclusion

For all of the foregoing reasons, NEG's motion for partial judgment on the pleadings is hereby DENIED.

IT IS SO ORDERED:

Ernest C. Torres
Senior District Judge
Date: 1/30/08