**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| GAIL, JOHN D. AND JOHN F. CORVELLO, et al., | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | |
| NEW ENGLAND GAS COMPANY, INC., | ) | C.A. No. 05-221T |
| *Defendant and Third-Party Plaintiff,* ) | ) | (Consolidated case nos: 05-274T, 05- 370T, 05-522T) |
| v. | ) | |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC; et al. | ) | |
| *Third-Party Defendants.* | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT NEW ENGLAND GAS COMPANY'S EMERGENCY MOTION TO STRIKE PLAINTIFFS' NEWLY PROFFERED EXPERT TESTIMONY AND OPINIONS ON LIABILITY**

Defendant New England Gas Company's ("NEGCo") motion to strike is without merit and should be denied. The motion concerns material provided to NEGCo concerning three of Plaintiffs' experts and as will be made clear in the discussion below does not involve "new opinions, new findings, new analyses or new information"[1][2], and certainly has not put NEGCo at any disadvantage nor has it caused NEGCo any prejudice. In short, NEGCo complains about the following:

[1] Rule 26(e)(2) of the Federal Rules of Civil Procedure explicitly allows for the supplementation of expert information. The Rule states:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

[2] In this case, the Court has set the filing date for pretrial disclosures at April 15, 2008.

1. Plaintiffs' environmental engineering expert prepared a demonstrative aid, several maps, from data produced to NEGCo as part of its February 15, 2007 report, which illustrates which properties in Tiverton have MGP waste and which do not. The property specific data that the expert used to present this information visually was not only received by NEGCo on February 15, 2007, it is primarily information generated long ago *for* NEGCo by its own consultant. The map does not involve "new opinions, new findings, new analyses or new information." It is a regurgitation of old information formatted to enable the Court and jury to efficiently consider which properties have MGP waste and which do not.

2. Plaintiffs served NEGCo on January 31, 2007 with a Professor Eric Suuberg's lengthy, detailed report of NEGCo's historical knowledge of the nature of and risks posed by MGP waste, and his review of invoices, corporate documents and first hand witness recollection of collecting MGP waste from Fall River and bringing it to Tiverton. On February 7, 2008, he interviewed two more Tiverton residents who also had some recollection of MGP waste coming from NEGCo's Fall River operation. Shortly thereafter, he left for a 3 week trip in Europe. Upon his return, which was the day before his deposition, he advised Plaintiffs counsel that he had notes from that interview. The notes were immediately produced that day to counsel for NEGCo, who examined him the next day about the circumstances of the interview, and who have been offered a second day to conduct any further examination with respect to information he obtained from these two percipient witnesses. It defies logic for NEGCo to characterize these notes as "new opinions and information" or for NEGCo to suggest that it "does not have adequate time before trial to analyze, evaluate and respond …" They are simply recollections that corroborate the memory of a witness identified in his report.

3. Plaintiffs simultaneously served several expert reports on February 15, 2008, including the report of their toxicologist, Ellen Silbergeld, Ph.D. At the time that Dr. Silbergeld finalized her report, she did not have the final reports of Plaintiffs' engineering and forensic experts, which were also finalized at the same time. Thus, for completeness, Plaintiffs provided Dr. Silbergeld with a copy of these reports and a cover letter. Although the cover letter asks Dr. Silbergeld to advise if she needs to supplement her report, Plaintiffs do not expect that Dr. Silbergeld will make any supplementation to her report.

<u>Weston & Sampson</u>

Weston & Sampson fully disclosed their liability opinions in their report disclosed on February 15, 2008 ("Weston & Sampson Report") and the recently disclosed diagrams are merely to assist the jury in understanding Weston & Sampson's opinions and should not be stricken.

On February 15, 2008, Weston & Sampson produced a four (4) volume opinion report together with approximately six (6) boxes of underlying environmental data on which Weston & Sampson based its opinions. In the Weston & Sampson Report, Weston & Sampson reveals that it reviewed the subsurface investigations conducted by Vanasse, Hangen & Brustlin, Inc. ("VHB"), New England Gas Company's ("NEGCo") primary consultant on one hundred (100) properties in the Bay Street Neighborhood Study Area ("BSNSA"). Weston & Sampson also describes the limited investigation that it performed in order to verify the work performed by VHB. The very first finding in Section 10: Findings and Conclusions is the following:

> MGP is widespread and heterogeneous throughout the BSNSA as documented by both West and NEGCo's environmental consultant, VHB. Based on information presented in the VHB reports and the GZA remedial cost estimates, MGP waste was observed by VHB on 77 of the 100 properties investigated.

On the third finding, Weston & Sampson identified the visual indicators of MGP residual/fill to include the following: soil with blue/black staining, moth ball odors, presence of slag, clinker, ash, brick, concrete, wood/mulch and other non-native fill material. Weston & Sampson went on to identify the chemicals detected by both VHB and Weston & Sampson that are characteristic of manufactured gas plant waste ("MGP") to include the following:

- metals including, but not limited to, arsenic and lead,
- polycyclic aromatic hydrocarbons ("PAHs")
- petroleum hydrocarbons, and
- cyanide.

In order to reach the conclusion that seventy seven (77) of the one hundred (100) properties investigated by VHB contained MGP, Weston & Sampson prepared property by property evaluations reviewing the analytical data, boring logs, field notes, test pit logs and other available data to support their conclusion the MGP was present on each of the seventy seven (77) properties. In order to confirm the VHB data, Weston & Sampson undertook an investigation of

thirteen (13) properties in the BSNSA which included making visual observations, installing borings, conducting test pitting, and sending samples for laboratory analyses. Weston & Sampson additionally retained Paul D. Boehm, Ph.D. of Exponent, Inc. to conduct detailed forensic analyses of the PAHs detected in the BSNSA area to ensure that the PAHs were related to MGP rather than some other petroleum product. All of this information was compiled and reviewed by Weston & Sampson in order to reach its conclusion that MGP was present on specific properties within the BSNSA. Attached hereto is an excerpt from the Weston & Sampson February 14, 2008 Expert Report which demonstrates that Kelly Race, LSP of Weston & Sampson had reviewed all of the underlying data and reached the conclusion that 77 of the 100 properties investigated are contaminated in that report. Weston & Sampson had prepared property by property summaries of all data in the identified reports that evidenced the investigations conducted in the BSNSA. It should be noted that the vast majority of the data relied upon was produced by NEGCo's own consultant, VHB. Therefore, the diagrams that NEGCo is objecting to are merely different presentations of mostly its own data so that it will be easier for the jury to understand the data. Weston & Sampson in the February 14, 2008 report at figure 4 attempted a more limited version of depicting the data supporting their conclusion of MGP waste which was not as easily understandable. Therefore, discussions continued about the best way to present the available data from the BSNSA which resulted in the production of the disputed diagrams. Weston & Sampson determined that preparing separate diagrams for the properties that contained physical evidence of MGP, each of the chemicals of concern, and a composite of all of the evidence would most effectively convey the massive amount of data, the vast majority of which was NEGCo's own data, in the most understandable way to the jury. As a result, on March 14, 2008, the maps were forwarded to NEGCo.

The maps do not reflect any new opinions of Weston & Sampson, but rather take the data that was presented in the Weston & Sampson Report and present it in a way that is understandable to the jury.

Weston & Sampson's opinion concerning remediation goes to damages and was properly disclosed on March 14, 2008 pursuant to the Order of the Court.

When the Weston & Sampson Report was disclosed, the Court had indicated that the trial was most likely going to be bifurcated with liability being tried first. As a result, the parties were operating with the understanding that liability experts needed to be disclosed in February and that damages experts would be disclosed during the four (4) month period of discovery preceding the damages days of the trial. When the Court consolidated both the liability and damages phase of the trial, it set March 14, 2008 as a deadline for disclosing damages experts. The plaintiffs have made clear that Weston & Sampson would be testifying as to the costs of potential remediation of the contamination in the BSNSA. At page 2-4 and 2-5 of Weston & Sampson Report, Weston & Sampson described the remedial cost estimate prepared by GZA GeoEnvironmental, Inc. ("GZA") and the factors used by GZA to create their remedial cost estimate. The GZA remedial cost estimate was prepared in connection with the sale of certain assets by Southern Union Company to National Grid and has been in the possession of NEGCo since July 2006.

When the Court consolidated both the liability damages phases of the trial, Weston & Sampson conducted its own evaluation of the remediation necessary in the BSNSA, based upon the GZA cost estimates. The same basic remedial strategy was adopted, however additional

properties, differences in estimates of fill and the passage of time were incorporated in to Weston & Sampson's estimate of the cost of remediating the BSNSA.

The deposition of Kelley Race, LSP, of Weston & Sampson was scheduled for May 19, 2008 to provide defendants with an opportunity to fully examine her expert opinions, expertise and experience. To object to taking Ms. Race's deposition on the basis that in large part she had presented VHB's data in more understandable format is not an "ambush" or new opinion which the First Circuit in *Macaulay v. Anas*, 32f. 3d45, 50 (1st. Circ. 2003) intends to prevent. NEGCo has had between 2 and 5 years to understand its data and has had all of Weston & Sampson's data since February 15, 2008. Therefore, it has had more than ample time to review and understand the full extent of MGP in the BSNSA area.

As to the costs on remediation, NEGCo is proceeding to schedule the other damages experts on an expeditious basis, and there is no reason why the remediation costs should be dealt with differently than the estimates of property damage or the opinions concerning emotional distress and loss of use and enjoyment of property.

<u>Eric Suuberg, Sc.D.</u>

Professor Suuberg's notes from his interview of two Tiverton residents was given to counsel for NEGCo as soon as Plaintiffs' counsel learned of them. On March 11, 2008, plaintiffs' counsel met with Dr. Eric Suuberg who had returned the day before from almost three (3) weeks in Europe. At the meeting, Dr. Suuberg presented his interview notes as a supplement to his expert report, which plaintiffs' counsel did not request be prepared and were totally unaware had been prepared. The report is three (3) pages long and consists of his notes from interviews with two (2) fact witnesses, a copy of which is affixed hereto. At 12:03 PM, on March 11, 2008, plaintiffs' counsel forwarded Dr. Suuberg's Supplemental Report to NEGCo's

counsel in order that they could question Dr. Suuberg about the interviews with the witnesses at Dr. Suuberg's deposition on March 12, 2008. During his deposition, Dr. Suuberg confirmed that plaintiffs' counsel were unaware that he had prepared interview notes as a supplemental report until March 11, 2008. Inasmuch as Dr. Suuberg testified that Plaintiffs' counsel did not know he had these notes until March 11, 2008, it is hard to follow NEGCo's assertion in its motion that he "could easily have provided the supplement to NECGo over a month ago – *but the plaintiffs did not ask him to do so.*" See, NEGCo Memorandum in Support at 6. (Emphasis added.)

> Q. Dr. Suuberg, when did you give your draft supplement, Exhibit 2, to your attorneys?
> A. I'm sorry. We are talking about the supplement, not the report?
> Q. Right.
> A. Yesterday.
> Q. That was the first time you gave it to them?
> A. Yes.
> Q. When did they learn that you were preparing a supplement?
> A. Yesterday.
> Q. You didn't inform them anytime before yesterday that you had started working on a supplement on February 7th?
> A. We had – we had talked about possibly doing one but then let the matter drop. Never had any further communication on it before I went to Europe. And yesterday I finally asked Mr. Orent, I got this, you want it? And so –

Dr. Suuberg's interview notes do not contain new opinions, findings, or analyses. Rather, the report provides more factual support from the lay witnesses to conclusions contained in his previously disclosed expert report. The defendants have had a full opportunity to question Dr. Suuberg at the March 12, 2008 deposition. Additionally, the plaintiffs have agreed to produce Dr. Suuberg for a second day of deposition, so any harm NEGCo could possibly allege by the disclosure of interviews of two (2) additional fact witnesses after the preparation of his original report are more than cured by plaintiffs willingness to provide Dr. Suuberg for examination by NEGCo.

<u>Ellen K. Silbergeld, Ph.D.</u>

Dr. Ellen Silbergeld was properly provided with the final reports of Weston & Sampson, Dr. Paul D. Boehm and the 2006 Amended Notice of Violation to NEGCo.

Dr. Silbergeld is a toxicologist who prepared a liability expert report which was properly disclosed on February 15, 2008 concerning the chemicals in the BSNSA, their toxicity and other related opinions. The document relied upon for Dr. Silbergeld's expert report were fully disclosed and identified in that report. Unfortunately, due to difficulties getting onto the NEGCo Charles Street Facility (original request October 2007, access granted January 8-9, 2008), the final Weston & Sampson reports were not available until February 15, 2008, the same date that Dr. Silbergeld's report was due. In order for Dr. Silbergeld to properly testify concerning the hazardous substances in the BSNSA, their toxicity and related opinions, it is appropriate for Dr. Silbergeld not only to see the raw data but also to see the final reports of the plaintiffs other liability experts. Reviewing the final reports of Weston & Sampson and Dr. Paul Boehm has not changed the substance of the Dr. Silbergeld's opinions, however, her opinions are now based upon the final data and analyses prepared by Weston & Sampson and Dr. Boehm in addition to the interim data that she had prior to preparing her report. The plaintiffs gave timely notice to the defendants of the fact that they provided Dr. Silbergeld with Weston & Sampson's and Dr. Boehm's February 15, 2008 expert reports. Dr. Silbergeld's deposition has yet to go forward and the defendants have ample opportunity to question Dr. Silbergeld about her receipt, review and analysis of these documents. Plaintiffs have not prepared a supplement report and have not attempted to alter Dr. Silbergeld's substantive opinion rendered in her February 15, 2008 report following her review of these materials.

At the March 6, 2008 chamber conference, counsel for NEGCo stressed that it should not be required to produce its expert reports until it had deposed the corresponding expert for

Plaintiffs. The logic of that position was that an expert's opinions and anticipated testimony cannot be fully comprehended until he or she is deposed. None of the experts about whom NEGCo now complains had been deposed at the time that Plaintiffs gave NEGCo (1) maps regurgitating data disclosed in the Weston & Sampson final report and (2) Dr. Suuberg's interview notes of two additional fact witnesses. Apart from the fact that these materials are not "new opinions, new findings, new analyses or new information", NEGCo receipt of these materials before the expert was deposed underscores why this motion has no merit.[3]

NEGCo is attempting to create issues concerning plaintiffs' experts where no substantive issue exists. All of the disclosures and actions complained about in NEGCo's Motion to Strike are appropriate and consistent with the Rules of Federal Procedure as well as the Court's orders in this case. Finally, as NEGCo disclosures of their expert reports are tied to their completion of depositions of the plaintiffs' experts, the plaintiffs have yet to receive a single expert report from NEGCo despite the fact that trial is only one (1) month away. If any party is being prejudiced by the disclosure of expert reports, it is the plaintiffs[4]

---

[4] However, should this Court conclude that these were in fact new opinions rather than supplements to the opinions already proffered, the Defendant has still not met the test set forth by the 1st Circuit Court of Appeals. In Macaulay v. Anas, the First Circuit held that the "court of appeals must consider a multiplicity of pertinent factors, including the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects. Thibeault, 960 F.2d at 244; Johnson v. H.K. Webster, Inc., 775 F.2d 1, 7-8 & n. 7 (1st Cir.1985). Surprise and prejudice are important integers in this calculus. Thibeault, 960 F.2d at 246; Johnson, 775 F.2d at 7 n. 7. So too is an assessment of what the late disclosure portends for the court's docket. Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir.1998)." Macaulay v. Anas, 321 F.3d 45, 55 (1st Cir. 2003).

WHEREFORE, the plaintiffs respectfully request that the Court deny the defendant NEGCo's motion in its entirety.

Dated: March 24, 2008

Respectfully submitted,

PLAINTIFFS,
By and through their attorneys,

*<u>/s/ Robert J. McConnell</u>*
Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
**MOTLEY RICE, LLC**
321 South Main Street
Providence, RI 02940
(401) 457-7700

Mark W. Roberts
**MCROBERTS, ROBERTS AND RAINER, LLP**
53 State Street
Boston, MA 02109
(617)-722-8222
(617)-720-2320 Fax

David C. Strouss
Neil T. Leifer
Brad J. Mitchell
**THORNTON & NAUMES, LLP**
100 Summer Street, 30th Floor
Boston, MA 02110
(617) 720-1333

## CERTIFICATION

Service upon the following parties was completed electronically via the ECF system on March 18, 2008 pursuant to Fed.R.Civ.P. 5(b)(2)(D) and §10(b) of Admin. Order 2006-01.

*<u>/s/ Robert J. McConnell</u>*
Robert J. McConnell